LAUX ET AL., RESPONDENTS, *v.* HOGL, APPELLANT.

(No. 3,140.)

(Submitted May 2, 1912. Decided May 9, 1912.)

[123 Pac. 949.]

*Brokers—Right to Commission—When and When not—Expense of Time and Money—Immateriality.*

Brokers—Right to Commission—When.
    1. A broker is entitled to his commission if he produces a purchaser ready to accept, and who does accept, the offer made by the seller according to its terms.

Same—When not Entitled to Commission.
    2. Defendant gave to plaintiffs for a period of thirty days the exclusive right to sell certain property, with the proviso that after the expiration of such time he was free to sell to any purchaser found by himself. Plaintiffs procured a person willing to buy provided he found the property (situated in another city) as represented to him and in his opinion was worth the price asked for it. Defendant effected a sale about ten minutes after he had been informed by one of plaintiffs of the intending buyer's presence in the city for the purpose of examining the property. *Held,* that a meeting of minds of the seller and purchaser, resulting in an unqualified acceptance, not having been produced by their agency, plaintiffs were not entitled to their commission.

Same—Expense of Time and Money—Immateriality.
    3. The compensation of plaintiff brokers having been dependent upon their success in finding a purchaser for defendant's property, any expense of time or money made by them in their attempt to procure one was at their own risk.

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

ACTION by Philip Laux and another against John C. Hogl. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed and remanded.

*Messrs. Ayers & Marshall,* and *Mr. Wm. M. Blackford,* for Appellant, submitted a brief; *Mr. Blackford* argued the cause orally.

The court told the jury, in both written and oral instructions, that if plaintiffs before the sale to Hodel produced a purchaser ready, able and willing to buy the brewery stock and the real estate, on the terms proposed by the defendant, they should find

for the plaintiffs, otherwise for the defendant, and that by producing a purchaser is meant having a purchaser in Lewistown and notifying the defendant of his presence. Appellant contends that these instructions are erroneous. Producing a purchaser in Lewistown ready, able and willing to buy upon the terms proposed by the appellant and notifying appellant of his presence was not enough to entitle respondents to recover. Not until the prospective purchaser and appellant were brought together and such prospective purchaser offered to appellant to purchase or enter into a contract to purchase, or, not being brought together, respondents obtained a binding contract from such prospective purchaser to buy, on the terms proposed by appellant, before the sale to Hodel, would respondents be entitled to a commission where no sale was made. Nor was it sufficient that such prospective purchaser offered to respondents as brokers to buy or enter into a contract with the appellant on the terms proposed. (See *Gunn* v. *Bank of California,* 99 Cal. 349, 33 Pac. 1105; *Mattingly* v. *Pennie,* 105 Cal. 514, 519, 45 Am. St. Rep. 87, 39 Pac. 200; *Hardy* v. *Sheedy,* 58 Or. 195, 113 Pac. 1133; *Henry* v. *Harker* (Or.), 118 Pac. 205; *Tracy* v. *Fobes,* 132 Iowa, 250, 109 N. W. 772; *Watters* v. *Dancey,* 23 S. D. 481, 139 Am. St. Rep. 1071, 122 N. W. 430; *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Wilson* v. *Mason,* 158 Ill. 304, 49 Am. St. Rep. 162, 42 N. E. 134; *Hayden* v. *Grillo,* 35 Mo. App. 647; *Baars* v. *Hyland,* 65 Minn. 150, 67 N. W. 1148.)

*Messrs. Belden & De Kalb,* for Respondents, submitted a brief; *Mr. De Kalb* argued the cause orally.

A broker or agent who undertakes to sell property for another for a certain commission, when he finds a purchaser willing to purchase at the price, has earned and can recover his commission, though the sale was never completed, if the failure to complete the same was in consequence of a defective title or without any fault of the broker or agent. (See *Doty* v. *Miller,* 43 Barb. (N. Y.) 529; *Delaplaine* v. *Turnley,* 44 Wis. 31; *Moses* v. *Bierling,* 31 N. Y. 462; *McGavock* v. *Woodlief,* 20 How. (U. S.) 221, 15 L.

Ed. 884; *Finnerty* v. *Fritz*, 5 Colo. 174; *Fisk* v. *Henarie*, 13 Or. 156, 9 Pac. 322; *Hoye* v. *Chicago etc. Ry. Co.*, 65 Wis. 243, 27 N. W. 309; *Goss* v. *Broom*, 31 Minn. 484, 18 N. W. 290; *Smith* v. *Fairchild*, 7 Colo. 510, 4 Pac. 757; *Donley* v. *Porter*, 119 Iowa, 542, 93 N. W. 574; *Huntemer* v. *Arent*, 16 S. D. 465, 93 N. W. 653; *Carstens* v. *McReavy*, 1 Wash. 359, 25 Pac. 471; *Barnes* v. *German Savings & Loan Co.*, 21 Wash. 448, 58 Pac. 569.) The principal cannot, when the broker's efforts have resulted in negotiations for a sale, step in and by taking the matter into his own hands and completing the sale, escape liability to the broker. (Mechem on Agency, sec. 967; *Owl Canyon Gypsum Co.* v. *Ferguson*, 2 Colo. App. 219, 30 Pac. 255; *McLaughlin* v. *Wheeler*, 1 S. D. 498, 47 N. W. 816; *Scott* v. *Clark*, 3 S. D. 486, 54 N. W. 538; *Hubachek* v. *Hazzard*, 83 Minn. 437, 86 N. W. 426.) The commission of a broker is earned by finding a purchaser ready to enter into a valid contract on the terms fixed by the owner. (*Shanks & March* v. *Michael*, 4 Cal. App. 553, 88 Pac. 596; *Dolan* v. *Scanlon*, 57 Cal. 266; *Davis* v. *Lawrence & Co.*, 52 Kan. 383, 34 Pac. 1051.) If appellant sold to Hodel to avoid paying commissions to respondents, we think respondents were the procuring cause of the sale and are entitled to the commissions. (*Shober* v. *Dean*, 39 Mont. 255, 102 Pac. 323; *Williams* v. *Bishop*, 11 Colo. App. 378, 53 Pac. 239; *Smith* v. *Anderson*, 2 Idaho, 495 (537), 21 Pac. 412; *Lloyd* v. *Mathews*, 51 N. Y. 124.) Where the right to sell is reserved (and it always is impliedly reserved, unless expressly waived), the vendor cannot, while negotiations are under way, step in and defeat a sale. (*Owl Canyon Gypsum Co.* v. *Ferguson, supra; Phelan* v. *Gardner*, 43 Cal. 306; *Darrow* v. *Harlow*, 21 Wis. 302, 94 Am. Dec. 541; *Davis* v. *Lawrence*, 52 Kan. 383, 34 Pac. 1051.) The question of whether or not the respondents produced a purchaser, ready, able and willing to purchase, was, under the circumstances, properly submitted to the jury. (*McDermott* v. *Mahoney*, 119 Iowa, 470, 93 N. W. 499; *Hamill* v. *Baumhover*, 110 Iowa, 369, 81 N. W. 600; *Middleton* v. *Thompson*, 163 Pa. 112, 29 Atl. 796; *Smye* v. *Groesbeck* (Tex. Civ. App.), 73 S. W. 972.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiffs are copartners, doing business as real estate brokers at Lewistown, Montana. In this action, they seek to recover the sum of $5,000, alleged to be due them for their services to defendant in procuring a purchaser of 450 shares of the capital stock of the Lewistown Brewing Company and of certain real estate situated near Lewistown, in Fergus county, all the property of the defendant. The trial resulted in a judgment for the plaintiffs. The defendant has appealed from the judgment and an order denying him a new trial.

There is serious question whether the issue made by plaintiffs' reply to defendant's answer does not present substantial departure from the cause of action alleged in the complaint; but, under the view we have taken of the merits of the case as disclosed by the evidence, we deem it unnecessary to give special notice to this feature of the case. In our opinion, the evidence is insufficient to show a liability on the part of the defendant.

It appears that on November 4, 1910, the defendant gave to the plaintiffs, in writing, an exclusive agency to sell the stock, which constituted a controlling interest in the brewing company, for a period of thirty days, with a right of extension for thirty days' additional time in case a sale had not been effected, but with the proviso that after the expiration of the first period of thirty days the defendant was to be free to sell to any purchaser found by himself. The minimum price fixed by the agreement was $60,000. Of this plaintiffs were to receive a commission of $5,000. If a sale should be effected at a price in excess of $60,000, the plaintiffs were to receive one-half of the excess, in addition to the commission of $5,000. A sale was not effected during the life of the agreement, though negotiations had been had by plaintiffs with different parties, particularly with one Borgeson, who resides in Butte, and who had visited Lewistown to examine the brewery property in December, 1910, with a view of effecting a purchase of the stock through the agency of plaintiffs. These negotiations failed, because Bor-

geson insisted upon making payment of a part of the purchase price by a transfer to the defendant of property in Butte, which defendant was unwilling to accept.

On or about April 1, 1911, the plaintiffs, still hoping to effect a deal with Borgeson, solicited from defendant permission to renew their negotiations to that end. Defendant gave his consent orally, but stipulated that the deal should include, also, seven or eight acres of land belonging to him, and situate adjacent to the brewery property. · Defendant fixed his price for the whole property at $70,000. There was no specific agreement as to the amount of commission the plaintiffs were to receive; but the parties understood it was to be $5,000. The defendant told the plaintiffs that he was then negotiating with other parties for a sale of the stock; and that if he could effect a sale in the meantime he would do so. On April 2 plaintiff Hanley induced the defendant to accompany him to Butte to examine the Borgeson property with the hope of gaining his consent to take it. Upon examination of it, defendant expressed himself to both Borgeson and Hanley as willing to take it at $35,000, the price fixed by Borgeson. Borgeson had not theretofore examined the land belonging to the defendant. He stated that he would accept the defendant's property, both the stock and the land, if, upon examination, he found the brewery in the same condition it was when he had seen it in December, and if the land and the stock were worth the money demanded by defendant. At that time, Borgeson was recovering from an illness, and was unable to go at once to Lewistown with Hanley and defendant. He stated that he would go in a few days. Upon being told by defendant, in Hanley's presence, that he was negotiating with other persons, and that he intended to let the stock go to the first person with whom he could close a deal, Borgeson told him that, if he could sell in the meantime, to do so. One Hodel, a stockholder in the brewing company, had theretofore offered to buy the defendant's stock, but had not been able to procure the funds necessary. He was then making an effort to do so. On the evening of April 11, Hanley informed defendant by telephone that Borgeson

45 Mont.—29

would arrive in Lewistown that evening, and would be ready to make the deal. Borgeson did arrive as expected. About 8 o'clock on the next morning, Hanley informed defendant of Borgeson's arrival, and stated that he was "ready to do business." The statement was also made that Borgeson and Hanley would drive at once to the brewery, where defendant then was. Borgeson, being still weak from his illness, was not ready to go at that time, but expected to go later in the day. About 9:30 o'clock, the defendant went to the office of plaintiffs and informed them that he had closed his deal with Hodel, and that the negotiations with Borgeson were to be considered at an end. He had in fact made a sale of the stock to Hodel about ten minutes after he had been informed of Borgeson's presence in Lewistown.

It appears from the testimony of Borgeson that his purpose in going to Lewistown was to close the deal with defendant, provided, upon examination of the property, he found it to be as represented to him, and, in his opinion, was worth the money demanded for it. In this connection, he testified: "I had not noticed that ground when I was there in December. I was told that it belonged to Hogl individually, and he kept that as a home and also rented houses. I felt on that day that I would have been willing to have taken the property under the terms named on the morning when I arrived in Lewistown. No, sir; I would not say I was ready, willing, and able to do it until I had seen it. That is true that that was really the cause of my whole trip from Butte over here. I didn't know the real estate, or the condition the brewery was in, is why I didn't close up the deal and buy it. Mr. Hogl told me over at Butte, in the presence of Hanley, that he could not hold it for me; that first come, first served; and Hanley was present when he told me that. I said he should not hold it, in case of losing any sale on account of me; and as soon as I would be able I would come over, and I came of my own accord."

A broker is entitled to his commission when he shows (1) that [1] he was employed to sell or exchange property, or to procure

a purchaser therefor; and (2) that he found and introduced to his principal a person who was ready, able, and willing to purchase or exchange upon the terms proposed by the principal, or which were acceptable to him. (2 Clark & Skyles on the Law of Agency, sec. 771.) It is not necessary that a sale should be actually consummated, or that the broker has himself made a binding contract with the purchaser. It is sufficient if the principal is in a situation to execute it himself. (*Id.*) "The primary duty of the broker consists in bringing the minds of the vendor and vendee to an agreement. To entitle him to commissions, he must produce a purchaser ready and willing to enter into a contract on the employer's terms. This implies and involves the agreement of buyer and seller, the meeting of their minds produced by the agency of the broker." (Rapalje on Real Estate Brokerage, sec. 73.) In *McGavock* v. *Woodlief,* 20 How. 221, 15 L. Ed. 884, the court stated the rule thus: "The broker must complete the sale (that is, he must find a purchaser in a situation ready and willing to complete the purchase on the terms agreed on) before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale." However the forms of expression adopted by different courts may vary in the terms employed, they are generally in agreement in their statement of the rule. It was said by Judge Finch, in *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441: "The duty he [the broker] undertakes, the obligation he assumes as a condition of his right to demand commissions, is to bring the buyer and seller to an agreement. In that all the authorities substantially concur, although expressing the idea with many differences of phrase and illustration." The following cases are in point: *Wylie* v. *Marine Nat. Bank,* 61 N. Y. 415; *Hardy* v. *Sheedy,* 58 Or. 195, 113 Pac. 1133; *Gunn* v. *Bank of California,* 99 Cal. 349, 33 Pac. 1105; *Mattingly* v. *Pennie,* 105 Cal. 514, 45 Am. St. Rep. 87, 39 Pac. 200; *Darrow* v. *Harlow,* 21 Wis. 306, 94 Am. Dec. 541; *Finnerty* v. *Fritz,* 5 Colo. 174; *Hurd & Wilkinson* v. *Neilson,* 100 Iowa, 555, 69 N. W. 867; *Coleman's Exr.* v. *Meade,* 13 Bush (Ky.), 358; *Jones* v.

*Stevens,* 36 Neb. 849, 55 N. W. 251; *Wilson* v. *Mason,* 158 Ill. 304, 49 Am. St. Rep. 162, 42 N. E. 134; *Veazie* v. *Parker,* 72 Me. 443; *Ward* v. *Cobb,* 148 Mass. 518, 12 Am. St. Rep. 587, 20 N. E. 174. Some of these cases go so far as to hold that the negotiations must result in a binding contract between the purchaser and the seller. In our opinion, however, the broker is entitled to his commissions if he produces a purchaser ready to accept, and who does accept, the offer made by the seller according to its terms.

It is clear from the summary of the evidence given above that the plaintiffs did not bring themselves within this rule. It was [2]. understood by all the parties that no agreement was reached by the defendant and Borgeson at Butte. Borgeson reserved the right to examine the brewery property and the land before finally making up his mind. His trip to Lewistown was for the purpose of examination. He was not committed to anything until he had accomplished the purpose of his visit. The defendant had not given the plaintiffs the exclusive right to find a purchaser. He therefore had the right to sell, in any event, until a purchaser had been found by the plaintiffs who stood ready to accept the property without condition, and he was notified of that fact. (*Darrow* v. *Harlow, supra;* 2 Clark & Skyles on the Law of Agency, sec. 776.) To put this beyond doubt, he had informed both the plaintiffs and Borgeson that he was negotiating with other persons, and intended to sell if he could. Notwithstanding his knowledge of Borgeson's presence in Lewistown to examine the property, until the examination had been made and Borgeson had definitely accepted his offer, he was not devested of this reserved right to sell to Hodel, or anyone else, any part of the property at any price which he chose to accept. He was not under any obligation to wait until Borgeson could reach a conclusion as to what he should do. Therefore, the plaintiffs did not put defendant in such a position that he was required to complete a sale to Borgeson, however ready the latter might have been to accept defendant's offer according to its terms, after he had accomplished the purpose of his visit. Borgeson still had the right to accept or reject the offer. Hence a meeting of the

minds of the seller and purchaser was not produced by the agency of the plaintiffs.

It is not of import that the plaintiffs expended time and money [3] in their attempt to procure a purchaser, which the evidence shows to be a fact. Under the terms of their employment, their reward was dependent upon their success. Any expense of time or money made by them, however great it might have been, was at their own risk. (*Sibbald* v. *Bethlehem Iron Co., supra;* 2 Clark & Skyles on the Law of Agency, sec. 776.)

The judgment and order are reversed. The cause is remanded to the district court, with directions to enter judgment for the defendant.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH did not hear the argument and takes no part in the foregoing decision.

ON MOTION FOR REHEARING.

(Submitted May 29, 1912.   Decided May 31, 1912.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In their brief in support of a motion for rehearing, counsel contend that, though the defendant had reserved the right to make a sale, the reservation was with reference to the whole property, both the stock and the land; and hence that, while, under the circumstances disclosed by the evidence, the defendant could lawfully have sold it, thereby revoking the authority of plaintiffs and freeing himself from liability to them for a commission, he could not, and did not, accomplish this by effecting a sale of the brewery stock, a part of it, after the negotiations with Borgeson were approaching completion.

As between the principal and agent, the authority of the agent may be revoked at any time. The relation of principal and agent is a personal one; and if the principal does not care longer

to repose trust in the agent, the law will not compel him to do so. This general rule is subject to the important limitation that, when the authority is coupled with an interest, the principal cannot revoke it without regard to such interest, except at the peril of liability for damages as for the breach of any other contract. The principal may agree that for a definite period the agent may have the exclusive right to exercise a given power. If, in such case, the principal violates his agreement by exercising the power himself, he cannot escape liability under the claim that he has revoked the agent's authority to exercise it.

So when an owner employs a broker to obtain a purchaser for his property for a commission, knowing that the effort to find a purchaser and effect a sale will involve the expenditure of time and labor, and the agent does this in good faith, with the result that his efforts are approaching success, the owner cannot with impunity revoke his authority, for the purpose of evading payment of the commission and effect the sale himself. Nor, for the same reason, may he disable himself from carrying out the contract of sale after the broker has found a purchaser who has accepted the offer made by the owner according to its terms. Under such circumstances it may well be said that the owner is under obligation to allow the broker a reasonable time within which to complete the negotiations. On this subject Mr. Mechem in his work on Agency says: "So where an agent is employed to perform an act which involves expenditures of labor and money before it is possible to accomplish the desired object, and after the agent has in good faith incurred expense and expended time and labor, but before he has had a reasonable opportunity to avail himself of the results of this preliminary effort, it could not be permitted that the principal should then terminate the agency and take advantage of the agent's services without rendering any compensation therefor. Thus, if a broker employed to sell property, had in good faith expended money and labor in advertising and finding a purchaser, and was in the midst of negotiations which were evidently and plainly approaching success, and the seller would revoke the authority, with the purpose of availing himself of the broker's efforts and avoiding the payment of his

commission, it could not be claimed that the agent had no remedy. In these cases, it might well be said that there was an implied contract on the part of the principal to allow the agent a reasonable time for performance; that full performance was wrongfully prevented by the principal's own acts; and that the agent had earned his commission." (Mechem on Agency, sec. 620.) To the same effect is the holding of the supreme court of California, in the case of *Blumenthal* v. *Goodall,* 89 Cal. 251, 26 Pac. 906, cited by counsel.

The facts of this case, however, do not bring it within these principles. The evidence clearly discloses that, while the plaintiffs were employed to find a purchaser for both the brewery stock and the land, they understood that the negotiations in which the defendant was engaged pertained exclusively to the brewery stock; and that it was with reference to it only that the reservation was made. Hence the plaintiffs knew that the defendant might at any time effect a sale of the stock only, and thus render abortive their negotiations with Borgeson. Under these circumstances, the defendant was free to sell the stock at any time until Borgeson had definitely accepted the offer made to him.

It is suggested that the defendant acted in bad faith in accepting Hodel's offer for the stock, after he had been informed that Borgeson was in Lewistown ready to make examination of the property; and that he should be held liable for this reason. As we have seen, he did exactly what he had reserved the right to do. He is therefore not open to the charge of bad faith.

The motion is denied.

MR. JUSTICE HOLLOWAY concurs.

Rehearing denied May 31, 1912.