SHOBER, APPELLANT, *v.* BLACKFORD, ADMINISTRATOR, RE-
SPONDENT.

(No. 3,161.)

(Submitted September 16, 1912. Decided October 10, 1912.)

[127 Pac. 329.]

*Brokers—Compensation—Complaint — Sufficiency—Evidence —
Admissibility.*

Appeal and Error—Complaint—Insufficiency—Effect.
1. A judgment of nonsuit will be affirmed, regardless of the merits
of plaintiff's claim, if the complaint fails to state facts sufficient to
show a liability on the part of defendant.

Brokers—Right to Commission.
2. Where a real estate broker is employed at a stipulated commission
to procure a purchaser upon terms named, the seller reserving the
right to consummate the sale, the broker has fully discharged his
undertaking when he has procured a buyer; and if, then, the seller
avails himself of the services so rendered and negotiates a sale, though
upon terms and conditions different from those named to the broker,
the latter may recover the commission agreed upon.

Same—Complaint—Sufficiency.
3. In an action by a real estate broker to recover his commission
under a contract by which he was required to procure a purchaser for
defendant's ranch at a specified price net per acre, and for certain
farm implements at a given figure, the complaint, in alleging a sale
of "said property" on terms agreed upon between the parties, was
sufficient and not objectionable as not alleging performance according
to the terms of the contract.

Same—Performance of Contract—Complaint—Sufficiency.
4. The statement in the complaint, that the property mentioned in the
contract sued upon had been sold through the agency of one G., asso-
ciated with plaintiff, was a sufficient allegation of performance by
plaintiff.

Same—Documentary Evidence—Admissibility.
5. Plaintiff's offered evidence in the shape of certified copies of the
certificate of incorporation of a company organized by one of his agents,
together with the minutes of the stockholders' and directors' meetings,
*etc.*, all having a tendency to prove that the company was organized
for the purpose of buying, and did buy, the property, commissions for
selling which plaintiff broker was seeking to recover, and thus to show
that a purchaser was secured through his agency, *held* improperly
excluded.

*Appeal from District Court, Fergus County; Sydney Sanner,
Judge of the Seventh Judicial District, presiding.*

ACTION by J. H. Shober, Jr., against William M. Blackford,
as administrator of the estate of Philip I. Moule, deceased.

From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Reversed and remanded.

*Messrs. Wm. Wallace, Jr., John G. Brown,* and *R. T. Gaines,* for Appellant, submitted a brief, a supplemental brief and one in reply to that of Respondent; *Messrs. Wallace* and *Gaines* argued the cause orally.

Respondent contended in the court below that we were bound to show that the purchaser produced by Shober was able, willing and ready to pay the price fixed in the contract as the net price to Moule, *viz.,* five dollars per acre. On this theory the respondent would have also limited the amount of Shober's commission, in the event a purchaser was procured able, willing and ready to pay more than five dollars per acre to such a sum as would represent the amount in excess of five dollars per acre that was realized from the sale. The trial judge adopted respondent's contention, but indicated that, if such a purchaser had been produced, in his judgment the entire amount of commission, *viz.,* one dollar and fifty cents per acre, would have been due Shober, regardless of whether the land brought any more than five dollars per acre. Appellant's contention is, that the contract did not in terms or intent require that, to entitle Shober to his commission, he must have produced a purchaser able, willing and ready to pay five dollars or more than five dollars per acre; but that even if such were the intention of the parties, its limitation could not be extended beyond purchasers whom Shober brought to Moule and with whom Moule declined to deal because of the proposed purchaser's unwillingness to pay his price. In cases such as the one at bar, appellant contends that where the owner of the property himself seizes upon a customer produced through the agency of the broker and acts independently of the broker in closing the deal with such a customer, even though the owner sells at a less figure than that specified in the broker's contract (and this is done without notifying the broker that he is prepared to accept a less sum than that specified in the contract), the owner yet remains liable

to pay the broker the amount of his commission. (See *Ice* v. *Maxwell,* 61 W. Va. 9, 55 S. E. 899; *Marlatt* v. *Elliott,* 69 Kan. 477, 77 Pac. 104; *Plant* v. *Thompson,* 42 Kan. 664, 16 Am. St. Rep. 512, 22 Pac. 726; *Hubachek* v. *Hazzard,* 83 Minn. 437, 86 N. W. 426; *Lipscomb* v. *Mastin,* 142 Mo. App. 228, 125 S. W. 1177; *Hovey* v. *Aaron,* 133 Mo. App. 573, 113 S. W. 718; *Lawson* v. *Coal Co.,* 53 Wash. 614, 102 Pac. 759; *Schlegal* v. *Allerton,* 65 Conn. 260, 32 Atl. 363; *Stewart* v. *Mather,* 32 Wis. 344; *Byrd* v. *Frost* (Tex. Civ.), 29 S. W. 46; *French* v. *McKay,* 181 Mass. 485, 63 N. E. 1068; *Holland* v. *Vinson,* 124 Mo. App. 417, 101 S. W. 1131; *Smith* v. *Sharpe,* 162 Ala. 433, 136 Am. St. Rep. 52, 50 South. 381; *Weeks* v. *Smith,* 79 N. J. L. 388, 75 Atl. 773; *Reid* v. *McNerney,* 128 Iowa, 350, 103 N. W. 1001; *Mullen* v. *Bower,* 26 Ind. App. 253, 59 N. E. 419; *Shelton* v. *Lundin,* 45 Ind. App. 172, 90 N. E. 387; *French* v. *McKay, supra; Arrington* v. *Cary,* 5 Baxt. (Tenn.) 609; *Curry* v. *Fetter,* 15 Ky. Law Rep. 494; *McMillin* v. *Beves,* 147 Fed. 218, 77 C. C. A. 444; *Goldsmith* v. *Coxe,* 80 S. C. 341, 61 S. E. 555; *Graves* v. *Hunnicutt,* 8 Ga. App. 99, 68 S. E. 558; *Hafner* v. *Herron,* 165 Ill. 242, 46 N. E. 211–213; *Howe* v. *Werner,* 7 Colo. App. 530, 44 Pac. 511; *Geiger* v. *Kiser,* 47 Colo. 297, 107 Pac. 267.)

Even if *Childs* v. *Ptomey,* 17 Mont. 502, 43 Pac. 714, by any chance, could be construed as tending to support the contention made by respondent below, we yet insist that the rule is so opposed to the weight of the well-reasoned authority announcing the equitable rule above detailed, that now that the matter is squarely presented, this court should disregard that decision and stand for the rule requiring the owners of property to compensate brokers for services rendered at their request by which sales of their property are accomplished.

It may be contended that some of the authorities above cited do not support the proposition that the broker is entitled to the amount of commission agreed upon in the contract, but only to a commission representing the reasonable value of his services. In this connection it is to be noted that respondent has charged that five per cent of the entire selling price is the usual commission; and therefore, were there nothing else in

the case, respondent would be bound by this admission of the usual amount payable as commission, provided appellant was entitled to any commission at all. But appellant has claimed that $13,000 represents a reasonable profit and commission in connection with the sale. This is also the amount due under the contract entered into with Moule. We desire to invite this court's attention to the decision in the case of *Blankenship* v. *Decker*, 34 Mont. 292, 85 Pac. 1035, wherein, in a case present- .ing somewhat similar features, it was held: "In so far as the court held that a recovery may be had upon a *quantum meruit* in this character of a case we think there was no error. The rule is well settled that though a contract, to be valid under the statute (Civ. Code, sec. 2815, *supra*), must be evidenced by a writing and subscribed by the party to be charged or his agent, the fact that it is in writing is a matter of proof and not of allegation in pleading (*Sweetland* v. *Barrett*, 4 Mont. 217, 1 Pac. 745; *Mayger* v. *Cruse*, 5 Mont. 485, 6 Pac. 333; *Hefferlin* v. *Karlman*, 29 Mont. 139, 4 Pac. 201); and upon a complete performance of an express contract for services at a stipulated compensation, there seems to be no sound reason why recovery may not be had upon the *quantum meruit*. (*Burgess* v *Helm*, 24 Nev. 242, 51 Pac. 1025; *Shepard* v. *Mills*, 173 Ill. 223, 50 N. E. 709; *Fells* v. *Vestvali*, 2 Keyes (N. Y.), 152.) In such case the effect of proof of the express contract is to make the stipulated compensation the *quantum meruit* in the case; and the fact that it must be evidenced by a writing being a matter of proof and not of pleading, the form of the pleading does not affect the merits."

*Mr. James A. Walsh, Messrs. Blackford & Blackford,* and *Messrs. Ayers & Marshall,* for Respondent, submitted a brief and one in reply to the supplemental brief of Appellant; *Mr. Walsh* argued the cause orally.

Under the provisions of the contract, the plaintiff was to have no compensation excepting what he could get over five dollars per acre, and under the letter of October 26 over five dollars and twenty-five cents per acre. It was therefore incum-

bent upon him to allege and prove that he sold the land, or that he procured a person ready, able and willing to purchase the land at more than five dollars and twenty-five cents per acre and to pay for the farm machinery the sum of $3,500.    (See *Hall* v. *Olson,* 58 Or. 464, 114 Pac. 638; *Childs* v. *Ptomey,* 17 Mont. 502, 43 Pac. 714; *Burnett* v. *Potts,* 236 Ill. 499, 86 N. E. 258; *Rees* v. *Spruance,* 45 Ill. 308; *Hurd* v. *Neilson,* 100 Iowa, 555, 69 N. W. 867; *Ball* v. *Dolan,* 18 S. D. 558, 101 N. W. 719; *Holcomb* v. *Stafford,* 102 Minn. 233, 113 N. W. 449; *Babcock* v. *Merritt,* 1 Colo. App. 84, 27 Pac. 882; *Beatty* v. *Russell,* 41 Neb. 321, 59 N. W. 919; *Wolverton* v. *Tuttle,* 51 Or. 501, 94 Pac. 961; *Gilmore* v. *Bolio,* 165 Mich. 633, 34 L. R. A., n. s., 1050, 131 N. W. 105; *Ames* v. *Lamont,* 107 Wis. 531, 83 N. W. 780; *Antisdel* v. *Canfield,* 119 Mich. 229, 77 N. W. 944; *Laux* v. *Hogl,* 45 Mont. 445, 123 Pac. 949; *Brown* v. *Adams* (R. I.), 69 Atl. 601; *Varn* v. *Pelot,* 55 Fla. 357, 45 South. 1015; *Ryan* v. *Page,* 123 Iowa, 246, 98 N. W. 768, 134 Iowa, 60, 111 N. W. 405; *Cassady* v. *Seeley,* 69 Iowa, 509, 29 N. W. 432; *Cullen* v. *Bell,* 43 Minn. 226, 45 N. W. 428.)

Thus, it will be seen that to entitle the plaintiff to recover, he must allege all the facts necessary to enable him to recover. There is a broad distinction between an agent's contract where the owner agrees to pay a certain percentage on the amount of the sale or a certain sum in the event of a sale, and a contract wherein the owner is to receive a certain amount net, and that the broker must receive a sum over that amount as his compensation. This rule is well established, and is clearly defined in the case of *Childs* v. *Ptomey, supra.*

We desire to call the attention of the court to the case of *Fulton* v. *Cretian,* 17 N. D. 335, 117 N. W. 344, on all-fours with the case at bar. (See, also, *Anderson* v. *Johnson,* 16 N. D. 174, 112 N. W. 139; *Largent* v. *Storey* (Tex. Civ.), 61 S. W. 977; *Newton* v. *Conness* (Tex. Civ.), 106 S. W. 892; *Buhl* v. *Noe,* 51 Ill. App. 622; *Schwartz* v. *Yearly,* 31 Md. 270; *Hungerford* v. *Hicks,* 39 Conn. 259; *Henderson* v. *Vincent,* 84 Ala. 99, 4 South. 180; *Thuner* v. *Kanter,* 102 Mich. 59, 60 N. W. 299; *Flower* v. *Davidson,* 44 Minn. 46, 46 N. W. 308; *Fenwick* v.

*Watkins,* 25 Ky. Law Rep. 1962, 79 S. W. 214; *Grindstaff* v.
*Merchants' Investment & Trust Co.* (Or.), 122 Pac. 46.)

It is contended that the plaintiff is entitled to recover on a
*quantum meruit.* It is not apparent on what theory this is
claimed. There is no allegation made in the complaint of the
reasonable value of service. Hence, there cannot be any re-
covery on a *quantum meruit.* The plaintiff sues upon an ex-
press contract, which precludes an implied contract. (*McArthur*
v. *Slauson,* 53 Wis. 41, 9 N. W. 784; *Ames* v. *Lamont, Holcomb*
v. *Stafford, Ball* v. *Dolan, supra.*) The right to recover in this
action must be found within the four corners of that alleged
contract, and such facts must be pleaded as will show a perform-
ance of that contract. This contract is one that must be in writ-
ing. (Rev. Codes, sec. 5017.) Nothing can be supplied by
parol. All the terms and conditions of the contract must be
set forth in the instrument, and the plaintiff must show a per-
formance of those conditions. (*Fry* v. *Platt,* 32 Kan. 62, 3
Pac. 781; *Smith* v. *Sherman* (Ala.), 56 South. 956; *Ebert* v.
*Cullen,* 165 Mich. 75, 130 N. W. 185; *Maisch* v. *Cobb* (N. H.),
79 Atl. 489; *Thurlow* v. *Perry,* 107 Me. 127, 77 Atl. 641; *Willis*
v. *Ellis,* 98 Miss. 197, 53 South. 498; *Phelps* v. *Good,* 15 Ida. 76,
96 Pac. 216; *Ruggerio* v. *Leuchtenberg,* 61 Misc. Rep. 298, 113
N. Y. Supp. 615; *Patt* v. *Gerst,* 149 Ala. 287, 42 South. 1001;
*Nelson* v. *Shelby M. & I. Co.,* 96 Ala. 515, 38 Am. St. Rep. 116,
11 South. 695.) Hence, it will be seen that if a contract re-
lating to the sale of land provides for compensation, no other
compensation can be proven.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Action by plaintiff to recover a commission for his services
as real estate broker. Philip I. Moule, a resident of Fergus
county, Montana, died on March 18, 1909. Thereafter the de-
fendant, having been appointed administrator of his estate, en-
tered upon the discharge of his duties as such, and is now act-
ing in that capacity. On July 24, 1907, the said Moule, being
the owner of a large amount of real estate and other property,

and desiring to sell the same, employed the plaintiff to procure a purchaser upon the terms and subject to the conditions set forth in the following writing:

"Bercail, Mont., July 24, 1907.

"I hereby list for sale with J. H. Shober, Jr., my ranch, comprising about 13,000 acres at Bercail, Fergus county, Montana, together with all water rights, water ditches, etc., appurtenant to same and agree to furnish warranty deeds to said land at the price of five ($5.00) per acre net to me, to be paid as follows: All cash, or $2.00 per acre cash and balance ———— at 7% interest. And in consideration of said agent's work and expense incident to handling said land, paying commissions, etc., it is understood and agreed that he is to add any profit or commission that he deems advisable and if said property is sold to anyone secured through his agency, or brought or sent by him that he will be entitled as a commission to the amount per acre which he adds to said net price of $5.00 per acre. It is understood that purchaser must buy the tools, implements, machinery, etc., now on said ranch at the price of $3,500. I also list for sale all stock on ranch which may be taken with ranch at the option of purchaser at prices to be agreed upon at the time of purchase. Should I decide to change the price on land I agree to give said Shober four months' time. See endorsement.

"[Signed]     Philip I. Moule."

It is alleged in the complaint, in substance, that the plaintiff accepted the employment thus tendered upon the terms and conditions specified, listed the property for sale, added to the net price of sale the additional sum of one dollar and fifty cents per acre for his commission, notified the said Moule of his action, and thereupon expended time and incurred expense in advertising the property in an effort to secure a purchaser. The complaint further alleges:

"(5) The plaintiff, through his own efforts as aforesaid, and the efforts of other persons who were working for him, to-wit, of John E. O'Connor, brought said property to the attention of one ———— Giltinan, who was then desirous of either purchasing the same or procuring others with him to purchase the

same, and that thereafter said Giltinan, with the purpose aforesaid, interested with himself one Lewis Penwell, of Helena, Montana, and they, the said Giltinan and said Penwell, thereafter entered into negotiations with said Moule for the purchase of said property, and to the end that the said property when purchased might be taken over by a corporation, they, the said Penwell and Giltinan, caused the said corporation to be organized, and as a result of their negotiations said property was sold and thereafter conveyed by said Moule to said corporation so organized by said Giltinan and Penwell on price and terms agreed upon between said Moule and said purchaser, and that said Moule never gave plaintiff any notice of his (said Moule's) purpose of changing the price of sale on said lands as fixed in said contract.

"(6) That, when Giltinan was so interested in said lands, it was agreed between plaintiff's agent, said O'Connor, and said Giltinan, that whether he (said Giltinan) bought alone or with others, or procured others to buy, he, the said Giltinan, should have the benefit of one-third of the said commission of one dollar and fifty cents per acre on the sale of said lands, and because thereof this plaintiff became entitled on said sale of said property as his commission therefor under said contract, to the sum of one dollar per acre, or $13,000, and that said property was so sold on or about July 1, 1908, and that ever since until date said Moule or his estate has been indebted to this plaintiff in the said sum of $13,000, with interest thereon at eight per cent per annum from said last-named date, and that no part thereof has ever been paid."

After alleging that the plaintiff presented his claim to the defendant, as required by the statute, prior to the bringing of the action, the complaint concludes with the prayer for judgment for the sum of $13,000, together with interest and the costs of the action. The defendant interposed a general and special demurrer, which was by the court overruled. The answer puts in issue the material averments of the complaint, except that it is averred that a sale was made by Giltinan to a corporation organized by himself, and that in doing so and in making the

sale he acted for himself. It also alleges affirmatively certain matters which are denied in the reply. These are not now of importance.

The evidence introduced tended to show that Moule listed his property with plaintiff under the terms and conditions stated in the written contract which was signed and delivered at the time at which it bears date; that he was subsequently notified by plaintiff of the amount added to the list price; that the plaintiff prepared a prospectus and mailed 200 or 300 copies of it to persons who he thought might be seeking investments in lands; that he wrote many letters to persons residing in different parts of the state and elsewhere in an effort to find a purchaser; that his efforts continued from the date of the contract until May 5, 1908; that during this time he was in constant communication with Moule by letter; that O'Connor was employed by the plaintiff, with the knowledge of Moule, to assist him in securing a purchaser, making use of copies of the prospectus prepared by plaintiff; that in September, 1907, O'Connor, on behalf of plaintiff, interested Giltinan in the enterprise, agreeing to allow him one-third of the commission in case a purchaser could be found by him alone or with others; that he furnished Giltinan with a copy of the prospectus; that later Giltinan informed him that he had been unsuccessful in finding a purchaser among his friends in the east, as he had hoped, but that he was going to take up the matter with Moule and Penwell with the purpose of effecting a sale; that Moule was informed that Giltinan had become interested through O'Connor and was jointly engaged with O'Connor and the plaintiff in seeking a purchaser; that it was shown that Moule thereafter conveyed all the land by warranty deeds to the Giltinan-Penwell Ranch Company, a Montana corporation doing business at Helena, together with the stock and ranch equipment. Some of the land, it appears, was situated in Meagher county. It also appears that the number of acres conveyed was 13,500. There is no question, however, that the conveyances covered the identical land listed by Moule with the plaintiff. Moule never at any time advised the plaintiff that he had changed the price desired from that listed by

him, except that on October 26, 1907, he wrote plaintiff that from and after November 10 following he would not sell for less than five dollars and twenty-five cents per acre, because he intended at that time to purchase a school section upon which he held an option at the price of ten dollars per acre, and that it would be necessary for him to add to the listed price twenty-five cents per acre upon the whole acreage, in order to make up for the additional outlay thus made. He did not make this purchase, and thereafter so informed plaintiff. Giltinan did not inform either plaintiff or O'Connor of the sale to the Giltinan-Penwell Ranch Company, nor did Moule, though on May 5, 1908, the latter wrote to the plaintiff that he had made arrangements for a sale, but that it would be some weeks before it would be finally consummated. After receiving this notice, and pending the Giltinan-Penwell Ranch Company deal, the plaintiff called the attention of Moule to the fact that Giltinan had been interested through his (plaintiff's) efforts. Moule at first said that plaintiff had no contract. He then said: "Oh, well, you don't need no contract. If the place is sold, I will make it all right with you." As a part of his case, plaintiff offered in evidence an authenticated copy of the certificate of incorporation of the Giltinan-Penwell Ranch Company, which bears date August 1, 1908, together with the minutes of the proceedings of the first meeting of its stockholders had on August 15. There were also offered authenticated copies of the record of the proceedings of the directors of the company at their first meeting held on the same day, together with a list of the subscribers to the stock of the company. In offering this evidence plaintiff sought to show that Penwell was one of the organizers and became a director of the corporation; that both he and Giltinan were or became subscribers for stock; that Moule was also a subscriber; that at the meeting of the stockholders a proposition was submitted by Penwell and Giltinan for a sale to the company of "the ranch known as the Moule ranch in Meagher and Fergus counties this state," at a gross price of $141,500; that included in the offer were 13,500 acres of land, 11,300 sheep, 300 cattle, 40 horses, and the ranch equipment; that it was dis-

cussed and accepted; that it included a recital that "any short-age in acreage should be settled for at the rate of six dollars per acre"; that immediately the directors elected Giltinan president and Penwell vice-president; that the proposal was submitted to the board of directors, and was unanimously approved; that arrangements were then made to procure funds to discharge an indebtedness due Moule for a balance of the purchase price, payment of which was deferred, and that "the treasurer was directed to make payments out of the funds of the company of the amounts due for the property under the terms of the offer, less any sum to be deducted for shortage of cattle or land"—in short, the purchase was to show that the price at which the sale was made was at least six dollars per acre, that, in fact, the corporation was organized for the purpose of being made the purchaser, and that the sale was, in fact, made to it by Moule. All this evidence was excluded on the ground that it was irrelevant and immaterial. At the close of plaintiff's evidence the defendant moved for a nonsuit on several grounds, all of which are comprehended in two: (1) That it appears from the evidence that Moule had terminated the agency of the plaintiff prior to the sale to the Giltinan-Penwell Company; and (2) that it is not alleged in the complaint, nor is there any evidence tending to show, that the plaintiff sent to Moule a purchaser, or that anyone went to him upon information obtained from the plaintiff, who was ready, willing and able to pay him for the land at the price of five dollars per acre, and $3,500 for the machinery and implements. The court sustained the motion, and directed judgment for the defendant. The plaintiff has appealed from the judgment and an order denying his motion for a new trial.

In order to sustain the judgment, counsel for defendant contend that the complaint does not state facts sufficient to show [1] a liability on the part of defendant's intestate. If this contention is maintainable, the judgment must be affirmed, whatever merit there may in fact be in the claim which the plaintiff seeks to establish. (*Tracy* v. *Harmon*, 17 Mont. 465, 43 Pac. 500.) In order to determine this contention, it will be

necessary to construe the contract and ascertain what are the relative rights and obligations of the parties under it.

There can be no question that it was understood by the parties (1) that the gross price to be demanded for the land was to be made up of the net price of five dollars per acre, and such specific amount as the plaintiff deemed it advisable to add as his commission; (2) that thereupon he was to use his efforts to secure a purchaser at that price; and (3) that in case a purchaser was brought or sent to Moule by the plaintiff, or secured through his agency, Moule was to demand that price. This becomes clear when it is noted that the plaintiff's office was not to effect a sale, because there is no suggestion of authority in him to do so, and that Moule was not to be at liberty to change the price so fixed by this arrangement, without giving the plaintiff four months' notice. Of course, to this was to be added $3,500 for the farm implements and machinery. Plaintiff's agency was not exclusive. He had only to send prospective purchasers to Moule, who alone was to conduct the negotiations and consummate the sale. Moule was at liberty to sell to any purchaser secured through his own effort or the agency of any other person than the plaintiff; but, since he had agreed not to change the selling price except upon four months' notice to plaintiff, he was not at liberty to sell to a purchaser secured by plaintiff at a lower price than that fixed in the agreement, without becoming liable for the commission. It was contemplated by both that, upon a sale procured through plaintiff's agency, he would be entitled to his commission; or, putting the statement in a different way, by fixing the selling price at five dollars per acre, Moule did not bind himself not to sell at a less price, but only made this the basis upon which the plaintiff was to use his efforts to secure a purchaser, with the assurance that, upon a sale to such a purchaser at any price Moule chose to ask, Moule would add his commission. Otherwise the limitation imposed upon the right to change the selling price would have no force or meaning, and, notwithstanding the stipulation in this regard, Moule could avail himself of the services rendered by plaintiff, and yet evade the commission by lowering the selling price.

It is the general rule that a real estate broker is not entitled to his commission until he produces a purchaser ready, able and willing to buy on the terms offered, or, in other words, the purchaser produced must not only be able to buy, but he must accept the offer upon the terms prescribed by the owner. (*Childs* v. *Ptomey,* 17 Mont. 502, 43 Pac. 714; *Laux* v. *Hogl,* 45 Mont. 445, 123 Pac. 949.) But this general rule is subject to exceptions, dependent upon the facts of the particular case. "Where an agent contracts to furnish a purchaser for land at a stipulated price and such agent does furnish a purchaser whom the owner accepts, and in the negotiations of the contract the owner agrees upon and accepts a different price from that at which the agent was instructed to sell, still such agent would be entitled to his compensation." (*Ice* v. *Maxwell,* 61 W. Va. 9, 55 S. E. 899.) "It is sufficient to entitle real estate brokers to their commissions if a sale is effected through their agency as its procuring cause, although the sale may be made by the owners of the property, if by their exertion the purchaser and the owner are brought together and a sale results therefrom." (*Plant* v. *Thompson,* 42 Kan. 664, 16 Am. St. Rep. 512, 22 Pac. 726.) In this case the court also said: "The defendants will not be allowed to take advantage of their introduction to the purchaser by plaintiffs, and reap the benefits of the sale made to him in consequence, and then escape all liability of paying them their commission because they sold the land for a sum less than the price given their agents, where the reduction was made of their own accord."

In *Armstrong* v. *Wann,* 29 Minn. 126, 12 N. W. 345, the court said: "All that plaintiff had to do to be entitled to his commission was to procure a purchaser ready and willing to buy upon his employer's terms. If he did so, it would make no difference that the employer made the bargain with the purchaser. Plaintiff, however, must have been the procuring cause of the sale. It must have been the result of the means and efforts employed by him—must have proceeded from these means and efforts." In *Hubachek* v. *Hazzard,* 83 Minn. 437, 86 N. W. 426, the court, in commenting upon the rule as stated in

this case, points out that the expression "upon his employer's terms" must be understood to mean, not necessarily the terms named to the agent, but terms which were acceptable to the employer. This understanding of the rule is promotive of fair dealing, and puts it beyond the power of the seller to defraud the agent out of the regard justly due him for services rendered in good faith. The application of it as it is usually baldly stated would tend to defeat, rather than protect and enforce, legal rights and obligations.

In *Chilton* v. *Butler*, 1 E. D. Smith (N. Y.), 150, we find this comment: "If vendors were permitted to employ brokers to look up purchasers, and call the attention of buyers to the property which they desired to sell, limiting them as to terms of sale, and then, while purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services and expenses of the broker in bringing the property into market, and accomplish a sale by abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing, gross injustice would be done, every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers, who were in reality procured by the efforts of the agent."

In *Kock* v. *Emmerling*, 22 How. (U. S.) 69, 16 L. Ed. 292, the court said: "Where the vendor is satisfied with the terms, made by himself, through the broker, to the purchaser, and no solid objection can be stated, in any form, to the contract, it would seem to be clear that the commission of the agent was due, and ought to be paid. It would be a novel principle if the vendor might capriciously defeat his own contract with his agent by refusing to pay him when he had done all he was bound to do. The agent might well undertake to procure the purchaser; but, this being done, his labor and expense could not avail him, as he could not coerce a willingness to pay the commission which the vendor had agreed to pay. Such a state of things could only arise from an express understanding that

the vendor was to pay nothing, unless he should choose to make
the sale.''

In the text of Mr. Rapalje, in his work on Real Estate Brokers,
it is said: ''Where the terms of sale are fixed by the vendor, in
accordance with which the broker undertakes to produce a pur-
chaser, yet if, upon the procurement of the broker, a purchaser
comes, with whom the vendor negotiates and thereupon volun-
tarily reduces the price of the property, or the quantity, or
otherwise changes the terms of sale, as proposed to the broker,
so that a sale is consummated, or terms or conditions are offered
which the proposed buyer is ready and willing to accept, in
either such case the broker will be entitled to his commission
at the rate specified in his agreement with his principal.''    (Sec.
100.)

Again, in *McMillin* v. *Beves,* 147 Fed. 218, 77 C. C. A. 444,
the rule is stated as follows: ''It is sufficient to entitle a broker
to compensation that the sale was effected through his agency
as its procuring cause; and when his communications with the
purchaser have been the cause or means of bringing the pur-
chaser and his principal together, and the sale has resulted in
consequence thereof, his right to compensation is perfect; and
when the principal assumes exclusive charge of the negotiations,
dispensing with the further efforts of the broker, and sees fit
to vary the terms originally proposed, the circumstance that
the sale is made upon the substituted terms will not defeat the
broker's right to compensation.   On the other hand, the broker
is not entitled to compensation for unsuccessful efforts to make
a sale, unless the failure has been caused by the fault of his
principal, and when he has been allowed a reasonable time to
effect the sale, and has failed, and the principal has in good faith
terminated the agency, and effected the sale through his own
efforts, the latter is not liable for commissions.''

But it is useless to multiply quotations from the decisions
which, though expressing the rule in varying terms, generally
[2]    agree that where the agent is employed at a stipulated com-
mission to procure a purchaser upon terms named, the seller
reserving the right to consummate the sale, the agent has fully

discharged his undertaking when he has procured a purchaser; and if, then, the seller avails himself of the services so rendered and negotiates a sale, though upon terms and conditions different from those named to the agent, the agent may recover the commission agreed upon in the contract, whether it be a fixed sum, or a commission at a percentage of the selling price, or at an agreed rate per acre. The following cases are in point: *Schlegal* v. *Allerton,* 65 Conn. 260, 32 Atl. 363; *Stewart* v. *Mather,* 32 Wis. 344; *Hoadley* v. *Bank,* 71 Conn. 599, 44 L. R. A. 321, 42 Atl. 667; *Sussdorff* v. *Schmidt,* 55 N. Y. 319; *Leonard* v. *Roberts,* 20 Colo. 88, 36 Pac. 880; *Stiewel* v. *Lally,* 89 Ark. 195, 115 S. W. 1134; *French* v. *McKay,* 181 Mass. 485, 63 N. E. 1068; *Carnes* v. *Finigan,* 198 Mass. 128, 84 N. E. 324; *Holland* v. *Vinson,* 124 Mo. App. 417, 101 S. W. 1131; *Smith* v. *Sharpe,* 162 Ala. 433, 136 Am. St. Rep. 52, 50 South. 381; *Hafner* v. *Herron,* 165 Ill. 242, 46 N. E. 211; *Ball* v. *Dolan,* 21 S. D. 619, 15 L. R. A., n. s., 272, 114 N. W. 998; *Mullen* v. *Bower,* 26 Ind. App. 253, 59 N. E. 419. To these may be added Walker on Real Estate Agency, sec. 465; 2 Clark & Skyles on Law of Agency, 771. The agent may, of course, agree that he shall not receive any compensation unless the sale is made within a specified time, or at the price and upon the conditions named by the seller. He will then be held to his agreement.

The theory of counsel for defendant is that, in order to support a recovery, it must be alleged and proved that the agent has not only procured a purchaser, but one who is ready, able and willing to accept, and who does accept, the terms exactly as they were named to the agent. They cite many cases in their brief which they insist support this view. Some of them seem to do so. We shall not notice them in detail. It may be remarked that in none of them was there involved a contract similar to the one involved here. Even so, we should not be inclined to approve them, and adopt a rule which seems to us so repugnant to common sense and fairness. Among others, they cite *Childs* v. *Ptomey, supra,* as conclusive in their favor. It merely declares the rule, however, that, when plaintiff counts upon a contract alleging a complete performance on his part,

46 Mont.—14

he cannot recover without showing complete performance. Nor is there anything in *Laux* v. *Hogl, supra,* also cited, inconsistent with the views stated above. The question involved there was whether the evidence tended to show that the plaintiff had procured a purchaser who was ready, able and willing to take the property upon any terms acceptable to the seller before the latter had effected a sale to a purchaser procured by himself. It was decided that the evidence did not show this condition. The promise of Moule was that "if said property is sold to anyone secured through his [Shober's] agency or brought or sent to him, that he will be entitled as a commission to the amount he adds to the net price of five dollars per acre." He was not at liberty to change the net price without notice. Under the rule established by the authorities cited, the plaintiff must be deemed to have fully discharged his obligation when he furnished a purchaser at the price per acre fixed in the contract, or any price which Moule was willing to accept.

The criticism made of the complaint is that it declares upon the contract, but fails to allege performance according to its terms, *viz.,* that plaintiff procured a purchaser at the price named in the contract, including also the farm implements at $3,500. It will be observed, however, that it alleges a sale of "said property"—that is, the property mentioned in the contract—to the corporation, through the agency of Giltinan and Penwell, on terms agreed upon between Moule and them, without notice to plaintiff. This, coupled with the other allegations showing that Giltinan was associated with the plaintiff, is a sufficient allegation of performance by the plaintiff. It was not necessary for him to allege that he produced a purchaser upon any particular terms. From this point of view the complaint states a cause of action.

This brings us to consider the propriety of the court's ruling in excluding the offered evidence. Bear in mind that it appears from the evidence admitted that O'Connor had interested Giltinan in the enterprise; that Giltinan, when he had his last conversation with O'Connor, informed him that he intended to take up the matter with Penwell and Moule, it being admitted, by

way of averment in the answer, that the sale was in fact made to a corporation organized by Giltinan, plaintiff was entitled to show, if he could, that the particular corporation was formed for the purpose of having it become the purchaser, through an agency put in motion by himself; for if it was created for this purpose by Giltinan, or through his agency, it was under the terms of the contract, a purchaser secured through the agency of the plaintiff. This evidence, showing, as it does, the date at which the corporation was formed, the meetings of the stockholders and directors, following, as they did, immediately after the certificate was executed, the proceedings then had looking to the purchase of the Moule property and the connection of Giltinan and Moule with the company, was all competent as tending to establish this fact. Incidentally, also, it furnished ground for an inference that the land was sold at the price of six dollars per acre, though, in view of what we have already said, this is not material. Without expressing an opinion as to the effect of the evidence admitted standing alone, when it is taken together with that excluded, a case is made upon which the plaintiff is entitled to recover, in the absence of countervailing evidence to rebut it. The ruling was erroneous.

Incidentally, this disposes of plaintiff's contention that the court erred in directing the nonsuit, so far as the order was based upon the second ground of the motion. The first ground of the motion proceeds upon the assumption that by the letter of October 26, 1907, Moule revoked the authority of the plaintiff. This letter, of which we have stated the substance, had no such purpose. Its purpose was to inform plaintiff that, in case Moule purchased the school section, he would add twenty-five cents per acre to the price already agreed upon, and that plaintiff could govern himself accordingly. The contemplated contingency, however, never arose, and hence the price was not changed. Besides, the evidence shows that Moule recognized the plaintiff as his agent up to May 5, 1908, when he finally informed him of the Giltinan deal. The order directing the nonsuit was error, therefore, so far as it is based on the second

ground of the motion. The result is that the court should have granted the plaintiff a new trial.

The judgment and order are reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument, and takes no part in the foregoing decision.

Rehearing denied November 2, 1912.

(Submitted September 16, 1912.  Decided October 10, 1912.)