SHOBER, JR., APPELLANT, v. DEAN, RESPONDENT.

(No. 2,672.)

(Submitted June 9, 1909.   Decided June 16, 1909.)

[102 Pac. 323.]

*Brokers—Real Estate—Right to Commission—"Indirectly" Interesting Purchaser—Evidence.*

1. Defendant had employed plaintiff, a real estate broker, to find a purchaser for his ranch. The contract provided that if the sale was made to one who had become interested in the property through plaintiff's efforts, directly or indirectly, he was to receive a commission of $500. Through plaintiff's endeavors one G. was induced to inspect the ranch, and the latter, while not becoming a purchaser himself, imparted the information thus obtained to P., who thereupon in conjunction with another entered into negotiations with defendant owner directly and bought the property. *Held,* that plaintiff was entitled to the commission, inasmuch as through his efforts a chain of events was set in motion which finally culminated in the sale.

*Appeal from District Court, Broadwater County; W. R. C. Stewart, Judge.*

ACTION by John H. Shober, Jr., against Thomas Dean. From an adverse judgment, plaintiff appeals. Reversed, and remanded for new trial.

*Mr. C. B. Nolan,* and *Mr. E. A. Carleton,* for Appellant.

*Messrs. McConnell & McConnell,* and *Mr. E. H. Goodman,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The plaintiff, John H. Shober, Jr., is now, and has been for several years, a real estate broker. In 1908 the defendant, Thomas Dean, owned a ranch near Townsend, in Broadwater county, which he desired to sell. He employed the plaintiff to effect a sale of the property. The contract between the parties, after describing the property and mentioning the terms of sale, provides: "I agree to pay said agent $500.00 commission for selling said property upon sale thereof by him, me or any other person. I reserve the right to advance my price after April 1, 1908. [Signed] Thomas Dean." Contemporaneously with the signing of the contract by the defendant the plaintiff indorsed thereon this memorandum: "Supplementary to Within Contract. I hereby agree that owner may retain the right to sell the within property himself to parties who have not become interested in it through my agency in any way directly or indirectly, and in the event of such sale I agree to accept $100 as my full commission. [Signed] J. H. Shober, Jr." A controversy having arisen as to the amount of commission to which the plaintiff was entitled upon the sale of the property, this action was brought. Upon the trial the jury returned a verdict in favor of the plaintiff for $100, and judgment was entered thereon, from which judgment and an order denying him a new trial the plaintiff appeals.

There is little, if any, substantial conflict in the evidence. The record discloses that, immediately after listing the property, the plaintiff prepared several hundred circulars describing it, and sent them out to prospective purchasers and to men who had made inquiry of him for lands. Otto Gaudlitz, a resident of Wibaux, Mont., seeking to purchase a ranch in the neighborhood of Townsend, enlisted the services of this plaintiff who furnished Gaudlitz with literature descriptive of the Dean ranch, took him over the ranch, and showed it to him. Gaudlitz, however, purchased from plaintiff another ranch in the same general neighborhood, and then returned to Wibaux,

where he had a conversation with John Payne, also a resident of Wibaux, in which conversation Gaudlitz described to Payne the Dean ranch, and gave him such information as he (Gaudlitz) had acquired from his trip over the ranch with the plaintiff. He also informed Payne that Shober was the agent for the sale of this ranch. Acting upon the information furnished by Gaudlitz, Payne came to Townsend, went to the Dean ranch and inspected it, and returned to Wibaux, where he imparted his information to Frank Cannon, who seems to have been interested with Payne in seeking to purchase a ranch for Payne. Acting upon the information received from Payne, Cannon came to Townsend, went to the Dean ranch, inspected it, and entered into negotiations with Dean directly, which resulted in a sale of the ranch by Dean to Payne and Cannon. There is not any controversy over these facts, and the other matters brought out on the trial are not of any material consequence in determining this controversy. Upon the conclusion of the evidence counsel for plaintiff asked the court to direct a verdict in favor of the plaintiff for $500, the amount to recover which the action was brought. The request was denied, and this ruling of the trial court furnishes the ground upon which a reversal is sought. The other assignments need not be considered.

The contract between these parties, omitting the memorandum or supplemental portion, is one common form of contract, and is designated in the books as an exclusive brokerage contract; that is, one under which the broker would be entitled to his compensation upon the sale of the property, during the term of the contract, whether the sale was effected by the broker, or through his efforts, or effected by the owner, or by someone else independently of the broker. (19 Cyc. 264.) With the supplemental portion attached the contract was limited somewhat in its scope, and under its provisions Shober could not claim the maximum commission if the sale should be made by Dean himself to some one who had not become interested in the property through the efforts of Shober, directly or indirectly. Shober was entitled to $100 upon a sale in any event; and, if

the sale was made to one who had become interested through his efforts, directly or indirectly, then he was entitled to $500 commission; and this brings us to a consideration of the one question before us, *viz.*, Did Cannon and Payne become interested in the Dean ranch through the efforts of Shober, directly or indirectly?

The word "agency," used in the memorandum, means effort, action, or instrumentality, and the word "indirectly" means by other than direct means. If Shober had sent one of his circulars, descriptive of the Dean ranch, to Payne or Cannon; or had posted signs or placards describing the property, and Payne or Cannon had seen them; or had advertised the property in a newspaper, and Cannon or Payne had seen the advertisement; or had exhibited the property to either one of them; or if he had interviewed either, or furnished him information respecting the property; or had brought either Payne or Cannon to Dean for the purpose of having him inspect the property; or had given Dean the name of Payne or Cannon as a prospective purchaser, and, as a result of any one or more of these things, the sale had been made by Dean—it would be held to have been the direct result of Shober's efforts. (*Derrickson* v. *Quimby*, 43 N. J. L. 373; *Sussdorff* v. *Schmidt*, 55 N. Y. 319; *Bell* v. *Kaiser*, 50 Mo. 150; *Earp* v. *Cummins*, 54 Pa. 394, 93 Am. Dec. 718; *Beauchamp* v. *Higgins*, 20 Mo. App. 514; *Tyler* v. *Parr*, 52 Mo. 249; *Stinde* v. *Blesch*, 42 Mo. App. 578; 23 Am. & Eng. Ency. of Law, 2d ed., 910.) If, then, by any of the foregoing acts, or similar acts, the efforts of Shober would constitute the direct or procuring cause of the sale, what acts of his did the parties have in contemplation when they used the term "indirectly" in this contract? It appears to us that there can be but one answer: It was intended that, if the efforts of Shober set in motion a chain of events which finally culminated in a sale of the property, then he should recover the maximum fee; and this appears to us to be just the case made out by the evidence, which is undisputed. (*Lincoln* v. *McClatchie*, 36 Conn. 136.) If Shober had not exhibited the property to Gaudlitz, or if Gaud-

litz had not imparted to Payne the information furnished by Shober, there is not anything in this record to show that Payne or Cannon would ever have heard of the Dean ranch; but, whether they would or not, the fact remains that Shober's efforts indirectly brought the ranch to their notice, and intertested them to the extent that they came from Wibaux to Townsend and examined the property, with the result that the sale was effected.

For the reasons given, the trial court erred in refusing to direct a verdict, and for the error the judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.