SKINNER, APPELLANT, *v.* RED LODGE BREWING CO.,
RESPONDENT.

(No. 6,099.)

(Submitted April 1, 1927.    Decided May 5, 1927.)

[256 Pac. 173.]

*Real Estate Brokers—Brokerage Contract—Statute of Frauds
—Note or Memorandum of Agreement—Insufficiency—Bur-
den of Proof.*

Real Estate Brokers—Contract and Modification must be in Writing—
Statute of Frauds.
1.    Under section 7519, Revised Codes 1921, which is mandatory, a
brokerage contract for the sale of real property as well as any
modification in terms, must be in writing and subscribed by the
party to be charged, or his authorized agent, to permit a broker to
recover compensation or a commission on sale of the property by the
owner.

---

1.    Necessity that broker's contract be in writing, see notes in 92
Am. Dec. 172; 13 Ann. Cas. 977; 10 L. R. A 103; 9 L. R. A. (N. S.)
933–939; 35 L. R. A. (N. S.) 118.    See, also, 4 R. C. L. 250, 301.

[79 Mont. 292.]

Same—Contract may be Established by Interchange of Letters—Corporations—Letter Written by Officer to Stockholder Held not Corporate Act—What not Note or Memorandum Under Statute of Frauds.
2.   While a brokerage contract sufficient to avoid the statute of frauds may be established by an interchange of letters between the broker and the owner of real property sold, a letter written by the secretary-manager of defendant corporation as an individual and not in his official capacity to another of its stockholders stating the attitude of certain holders of stock relative to a sale of the company's real property, the terms to be exacted and commission to be allowed in case sale was made to "anyone," was neither the act of the corporation defendant nor such a note or memorandum as is contemplated by the statute of frauds, and therefore plaintiff broker was properly nonsuited in his action to recover commissions for the sale of the property.

Same—Brokerage Contract—Burden of Proof.
3.   In an action by a real estate broker to recover commissions he has the burden of showing that at the time he produced a purchaser ready, able and willing to buy on the defendant's terms, and that there was an existing contract of employment between him and defendant sufficient to meet the requirements of the statute of frauds.

[1]   Brokers, 9 C. J., sec. 60 p. 558, n. 9.
[2]   Brokers, 9 C. J., sec. 60, p. 560, n. 17 New, 18, 20; sec. 127, p. 655, n. 42.
[3]   Brokers, 9 C. J., sec. 60, p. 560, n. 20; sec. 116, p. 644, n. 92.

*Appeal from District Court, Carbon County; Robert C. Stong, Judge.*

ACTION by John G. Skinner against the Red Lodge Brewing Company. Judgment for defendant and plaintiff appeals. Affirmed.

*Mr. Sterling M. Wood,* for Appellant, submitted a brief and argued the cause orally.

*Mr. S. C. Merriman,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

In this action, the plaintiff, an attorney at law duly licensed to practice and engaged in the practice of his profession in the state, residing at Red Lodge, seeks to recover from the defendant the sum of $800 on the quantum meruit for services rendered. Issue being joined by a general denial, the cause was tried by a jury. At the conclusion of the evidence in

support of the plaintiff's complaint, the court granted the defendant's motion for a nonsuit, and thereupon entered a judgment accordingly in the defendant's favor. The appeal is from the judgment.

The only question involved is whether the court erred in granting a nonsuit.

From the testimony it appears that the defendant is a Montana corporation, having its principal place of business in the city of Red Lodge, at which place it owned certain real estate with buildings and machinery thereon, which, prior to the year 1919, had been utilized by it in the manufacture of beer. From 1919 until the sale of this property, hereinafter adverted to, it had not been used by the defendants for any considerable time, nor profitably. From the year 1911 until the sale of the property in 1926, the plaintiff had been the attorney for the defendant corporation and had had many business dealings with it. He is not a real estate broker and never has held himself out to the public as such. Paul B. Lehrkind, a resident of the city of Bozeman, during the period of time involved herein was the secretary and manager of the defendant company, and Wm. Larkin, of Red Lodge, was a stockholder and director thereof. Mr. Lehrkind talked with the plaintiff several times respecting the desirability of making a sale of the property, and in consequence the plaintiff conceived the idea of making a sale of it to G. C. Myers, for use as a canning factory. The plaintiff interviewed Mr. Larkin and the likelihood of making such a sale was discussed by them. In this connection the plaintiff requested Mr. Larkin to write a letter to Mr. Lehrkind, at Bozeman, to ascertain whether the latter would be willing to sell the property, fix a price on it, and pay a commission upon the consummation of a sale thereof. As a result Mr. Larkin received a letter from Mr. Lehrkind, which reads as follows:

"Bozeman, Montana, Feb. 27, 1925.

"Mr. William Larkin, Red Lodge, Mont.

"Dear Bill: I am in receipt of your letter of the 24th inst., and contents noted as to the sale of the brewing building,

etc. I have interviewed the Lehrkind heirs, and they are willing to sell the building for $20,000; the brewing machinery, equipment, etc., is not in the deal and will remain the property of the Red Lodge Brewing Company. This brewing machinery, equipment, etc., we will try to sell to any one that could use it, either in Canada or Mexico, or elsewhere. In this deal, reservations must be made that the brewing company is to have permission to make a hole in the walls, if it should be so necessary, in order to remove the machinery, etc. Also, if the brewing company cannot get a suitable storage room to store their machinery, tanks, casks, etc., then, in that event, the brewing company shall have the right to erect a storage warehouse alongside of the brewery side track, on the brewing company's lots back of the present brewery building, with no rental charge. The hole in the wall is to be replaced by Brg. Co. As far as we are concerned up here in Bozeman, we are willing to allow the regular commission to any one that makes the sale, which is 5 per cent. If you can get this percentage down to a lower mark, you will save the brewing company just that much money. The regular rates as allowed to salesmen on city real estate is 5 per cent on deals from $500 on up to and including $20,000. Above that, it is graduated down.

"Hoping you much success, I remain with personal regards,

"Yours truly,

"Paul B. Lehrkind."

After receipt of this letter by Mr. Larkin, he told the plaintiff the substance of its contents, but stated the price asked for the property to be $25,000. Thereupon the plaintiff went to work actively in an endeavor to sell the property to Mr. Myers, and as a result of his efforts and negotiations the property was finally sold and transferred to the latter, on April 6, 1926, for the sum of $16,000. Both Lehrkind and Larkin knew that the plaintiff was engaged under their authority in negotiating a sale of the property to Mr. Myers for use as a canning factory. Mr. Myers refused to pay as much as $25,000 or $20,000 for the property, and after further negotia-

tions with the plaintiff finally offered to pay the sum of $16,000, which was accepted, and the transaction fully consummated on that basis. Plaintiff understood that he would be paid a commission, even though the property sold for a less amount than that stated to him, until Mr. Larkin advised the plaintiff that the defendant company had determined to accept the offer of $16,000 for the property, but would not be willing at that price to pay any brokerage commission.

The statute provides: "*What Contracts must be in Writing.* [1] —The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent: * * * 6. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission." (Sec. 7519, Rev. Codes 1921.) Pursuant to this express statutory requirement, the law is settled by repeated decisions that a brokerage contract for the sale of real estate in this state must be in writing and subscribed by the party to be charged, or his authorized agent, in order to permit a broker to recover compensation or a commission on the sale of real estate by the owner. (*King* v. *Benson,* 22 Mont. 256, 56 Pac. 280; *Marshall* v. *Trerise,* 33 Mont. 28, 81 Pac. 400; *Newman* v. *Dunleavy,* 51 Mont. 149, 149 Pac. 970; *Cobb* v. *Warren,* 64 Mont. 10, 208 Pac. 928; *Dick* v. *King,* 73 Mont. 456, 236 Pac. 1093.)

The writing upon which the plaintiff predicates his right to [2] recover a brokerage commission is in no sense a binding contract between the defendant company and the plaintiff to sell the property on the terms and conditions stated, but rather the expression, addressed to a person other than the plaintiff, of a willingness on the part of certain of the individual stockholders of the defendant corporation to sell on the terms stated. It cannot possibly be construed as a contract between the defendant corporation and the plaintiff, assuming that Lehrkind, as its secretary and manager, possessed authority to execute such a contract. The statute requires a note or memo-

randum, in writing, *subscribed by the party to ·be charged.*
The letter in evidence is obviously signed by Paul B. Lehrkind
as an individual, and does not in any manner purport to be a
corporate act or to bind the corporation itself in any way.    It
amounts merely to an expression of the attitude of the Lehr-
kind heirs, as individual stockholders in the corporation, and
it is addressed, not to the plaintiff, but to one of the stock-
holders and directors of the corporation.    In effect, it is merely
a declaration of the attitude of certain individual stockholders,
in the event a sale of the property shall be accomplished by
*"anyone"* on the terms stated.    This letter is not the character
of a note or memorandum, subscribed by the party to be
charged, made by the express language of the statute a pre-
requisite for the recovery of a broker's commission on the sale
of real estate.    It is manifest that it was not intended as a
corporate act.    In our opinion, it cannot be considered as
meeting the precedent requirement of the statute in any respect.
The case does not involve question of ratification by the ac-
ceptance of a less amount of money than was authorized in
the first instance, but rather a complete failure of authority
on the broker's part because of lack of the required authoriza-
tion.

The statute is mandatory and must be strictly followed as
respects the original agreement, as well as any subsequent
modification thereof.    A writing being necessary in the first
instance as a basis of recovery, where there is a change made
in the terms, it must also be reduced to writing so long as the
contract remains executory (*Cobb* v. *Warren,* supra), and the
burden rested upon the plaintiff to show that, at the time he
produced a purchaser ready, able and willing to buy. on the
defendant's terms, there was an existing contract of employ-
ment between himself and the defendant sufficient to meet
the requirements of the statute of frauds.    (*Brophy* v. *Idaho
Produce & Provision Co.,* 31 Mont. 279, 78 Pac. 493; *Newman*
v. *Dunleavy,* supra; *Dick* v. *King,* supra.)    This he has failed
to do.

However, contention is made by counsel for the appellant, [3] seriously it would seem, that the letter written by Lehrkind to Larkin is sufficient to remove the transaction from the bar of the statute of frauds; that as its manager Lehrkind acted for the corporation, and that, if anything were lacking to constitute it a sufficient writing subscribed by the party to be charged, Lehrkind's subsequent conversation, had with Skinner, recognizing the existence of the letter and its contents, was enough to bind the corporation. In his petition for a rehearing counsel for the appellant cites and relies on the case of *McCartney* v. *Clover Valley Land & Stock Co.* (C. C. A.), 232 Fed. 697, 1 A. L. R. 1127. We have carefully read and considered that case, and cannot see its application. The facts are widely distinguishable from the case before us. Of course, a contract of character sufficient to avoid the statute of frauds may be established by letters passing between the parties, as was the situation in the case relied upon. The statute does not prescribe any particular kind or form of writing which must be subscribed by the party to be charged; and, were the facts in the case now under consideration like unto those involved in the *McCartney Case,* we would find no difficulty in coming to a like decision. Nothing herein contained is at variance with the former decisions of this court in *Cobb* v. *Warren,* supra, or *Apple* v. *Henry,* 66 Mont. 244, 213 Pac. 444; nor can we see that those cases lack in consistency with each other or with the views herein expressed, as contended by appellant's learned counsel. We have carefully considered all of appellant's arguments advanced; and the authorities cited on the original presentation of the case, as well as on the motion for a rehearing, and can see no reason to alter our conclusion.

Wherefore the plaintiff cannot recover, and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

Rehearing denied June 4, 1927.