GANTT, APPELLANT, *v.* HARPER, RESPONDENT.

(No. 6,309.)

(Submitted May 2, 1928. Decided May 18, 1928.)

[267 Pac. 296.]

*Real Property—Brokers—Commissions—Breach of Contract by Owner—"Good," "Clear," "Marketable" Title Equivalent to Fee-simple Title—Statute of Frauds.*

Real Estate Brokers—Commissions—Note or Memorandum Required by Statute of Frauds Indispensable Prerequisite to Recovery.
1. Under the statute of frauds (sec. 7519, Rev. Codes 1921) one who seeks to recover a broker's commission upon an agreement authorizing him to procure a purchaser of real property must be able to show a note or memorandum, subscribed by the party to be charged or his agent, and where the original agreement was modified in its terms, the modification must likewise have been in writing and subscribed, the two being considered together as constituting the note or memorandum required by section 7519.

Same—When Broker Entitled to Commissions.
2. A real estate broker earns his commission whenever, within the time limit, he produces a purchaser ready, able and willing to buy the property in compliance with the terms of the brokerage contract, in the absence of a contract containing different provisions.

Real Property—Fee-simple Title—Definition.
3. A fee-simple title signifies an estate of inheritance clear of any condition, limitation or restriction; it stands at the head of estates as the highest in dignity and the most ample in extent.

Same—"Marketable," "Good," "Clear" Title Equivalent to Fee-simple Title.
4. A "marketable title," a "good title" and "clear title" are equivalent; they mean a title concerning which there is no fair or reasonable doubt, one which a court of equity would compel a purchaser to accept in a suit by the vendor for specific performance, to-wit: a fee-simple title.

---

1. Necessity that agent's authority to purchase or sell real property be in writing to enable him to recover compensation for his services, see notes in 44 L. R. A. 601; 9 L. R. A. (n. s.) 933. See, also, 4 Cal. Jur. 576; 4 R. C. L. 249, 300. Right to recover commissions under oral contract of employment where statute requires written contract, see notes in 13 Ann. Cas. 977; Ann. Cas. 1915A, 1133.
2. When real estate broker entitled to commissions, see notes in 28 Am. St. Rep. 546; 139 Am. St. Rep. 225. See, also, 4 Cal. Jur. 581; 4 R. C. L. 303. Performance by real estate broker of contract to find a purchaser, see note in 44 L. R. A. 593. See, also, 4 R. C. L. 303.
3. See 10 R. C. L. 649.
4. What is marketable title, see notes in 132 Am. St. Rep. 992; 38 L. R. A. (n. s.) 4. See, also, 25 Cal. Jur. 628; 27 R. C. L. 482.

[82 Mont. 393.]

Real Estate Brokers—Commissions—Offer to Accept "Clear" Title not
   Variance from Owner's Contractual Obligation to Furnish "Market-
   able" Title—Evidence.
   5. Under the last above rule, *held* that where the land owner
   pursuant to a brokerage contract agreed to furnish to the buyer
   an abstract of title showing a "marketable title" and the broker in
   a letter of acceptance to the owner stated that the purchase price
   would be paid when the latter would furnish an abstract showing
   a "clear title," the court erred in excluding from evidence the
   letter under objection that the acceptance varied the terms of the
   brokerage contract, the objection being untenable, in that a "mar-
   ketable" and a "clear" title mean the same thing.

---

   [1, 2]   Brokers, 9 **C. J.**, sec. 60, p. 558, n. 9, p. 560, n. 18; sec. 87,
p. 595, n. 29.
   [3–5]   Brokers, 9 **C. J.**, sec. 124, p. 652, n. 29.   Clear, 11 **C. J.**, p. 835,
n. 59.   Estates, 21 **C. J.**, sec. 8, p. 918, n. 95; sec. 9, p. 919, n. 7.   Ven-
dor and Purchaser, 39 **Cyc.**, p. 1450, n. 40, p. 1452, n. 49.

*Appeal from District Court, Missoula County; Theodore
Lentz, Judge.*

ACTION by E. D. Gantt against Howard E. Harper. Judg-
ment of dismisssal and plaintiff appeals. Reversed and re-
manded for new trial. ·

*Mr. E. C. Mulroney* and *Messrs. Murphy & Whitlock,* for
Appellant, submitted a brief; *Mr. A. N. Whitlock* argued the
cause orally.

We understand the rule to be that in the absence of a con-
tract containing different provisions, the broker earns his
commissions whenever he produces a purchaser ready, willing
and able to purchase upon the terms proposed by the seller.
(9 C. J. 595; *Apple* v. *Henry,* 66 Mont. 244, 213 Pac. 444;
*Laux* v. *Hogl,* 45 Mont. 445, 123 Pac. 949; *Shober* v. *Blackford,*
39 Mont. 255, 102 Pac. 323, 46 Mont. 194, 127 Pac. 349.)
Where no sale is in fact consummated through fault of the
seller, as, for instance, where his title fails, the result is the
same. (*Yoder* v. *Rundall,* 16 Okl. 308, 3 L. R. A. (n. s.)
576, and note, 83 Pac. 537.)

It is clear from the record that what the parties meant by
"clear" title was a marketable title, or a title free from en-
cumbrance, and that is actually what the defendant expected

to give and understood he was required to give and provided in this agreement that he would give. (See 38 L. R. A. (n. s.) 4.)

Under our theory of the case, it is sufficient that it appears that the abstract was in possession of the seller and that he made no objection at any time to furnishing it, and in fact acceded and agreed to all of the terms proposed in the entire deal, and went to the length of signing up a formal contract embodying an agreement to furnish an abstract and to show unencumbered title. This shows conclusively what his understanding of the arrangement was and certainly estops him from objecting to terms which he clearly agreed to. Under those circumstances, it is inconceivable to us how the defendant could say in this case that the plaintiff had not earned his commission for the reason that he had not produced a purchaser who was willing to buy upon the terms proposed, where the only particulars in which the terms are claimed to be different are the matter of furnishing an abstract and clear title. It was contemplated that both would be furnished. The defendant made no objection to furnishing them, and the only mention that was made about them was in a letter written some days after the purchaser had been procured, and which letter was not admitted in evidence. (See *Beatty* v. *Goodrich*, 224 Mich. 538, 194 N. W. 985; *Sotham* v. *Kern*, 221 Mich. 5, 190 N. W. 744; *Parker* v. *Stadden* (Mo. App.), 241 S. W. 973.) The rule is clear that where the seller does not rely upon any alleged variance in the terms proposed by the purchaser and the sale fails for some other reason, he cannot as an afterthought make an objection which he has not theretofore raised or relied upon, even though the objection were a valid one. (*Putnam Inv. Co.* v. *King*, 96 Kan. 109, 150 Pac. 559; *Frederick* v. *Landfield*, 78 Cal. App. 724, 248 Pac. 679; *McFarland* v. *Lillard*, 21 Ind. App. 160, 50 Am. St. Rep. 234, 28 N. E. 229.)

The same conclusion has been reached where the sale failed through the fault of the owner, who thereafter sought to rely

upon the inability of the purchaser to complete his purchase where no such objection had been previously made. (*Paris* v. *O'Harro*, 100 Okl. 264, 229 Pac. 161; *Schrag* v. *Cohn*, 125 Misc. Rep. 258, 210 N. Y. Supp. 524; *Garrisi* v. *Kass*, 201 Mich. 643, 167 N. W. 833.)

At the trial of this case counsel relied upon a line of cases holding that in the absence of contract to that effect the vendor was not required to furnish an abstract, and that consequently a proposal to sell is not really accepted by an acceptance which carries with it a condition that an abstract shall be furnished. We concede that by the weight of authority a vendor is not required to furnish an abstract in the absence of an agreement so to do. However, this rule is not universal. The English law is the other way, as are some cases in this country. (*Brewer* v. *Fox*, 62 Ill. App. 609.) The cases adopting the prevailing rule are careful to distinguish the cases where the furnishing of an abstract is not made a real condition, but is more in the form of a suggestion or request, as in this case. (*Kreutzer* v. *Lynch*, 122 Wis. 474, 100 N. W. 887; *Turner* v. *McCormick*, 56 W. Va. 161, 107 Am. St. Rep. 904, 67 L. R. A. 853, 49 S. E. 28.)

The line of cases relied upon by the defendant included: *Knox* v. *McMurray*, 159 Iowa, 171, 140 N. W. 652; *McQuary* v. *Missouri Land Co.*, 230 Mo. 342, 130 S. W. 335; *Ness* v. *Larson*, 41 N. D. 211, 170 N. W. 623; *Lacey* v. *Thomas*, 164 Fed. 623. All of these cases, however, are cases arising between vendor and purchaser, and involve the technical question of what constitutes an acceptance of an offer. This case is between a broker and his employer, and we are not concerned with the terms of the contract between the seller and the purchaser.

*Mr. Harry H. Parsons,* for Respondent, submitted a brief and argued the cause orally.

A ''marketable title'' means only one reasonably free from such doubts as would not deter a reasonably prudent man

from accepting it,—a title that will sell on the market; the doubt must be one which will reasonably interfere with the sale or which affects its value. (*Brokaw* v. *Duffy*, 165 N. Y. 391, 59 N. E. 196; *Ladd* v. *Weiskopf*, 62 Minn. 29, 69 L. R. A. 785, 64 N. W. 99; *Brendemuhl* v. *Schwager*, 155 Minn. 321, 193 N. W. 457.) A title is marketable, though it depends on the statute of limitations, though the title be undecided and undetermined by the court. (*Hedderly* v. *Johnson*, 42 Minn. 443, 18 Am. St. Rep. 521, 44 N. W. 527; *Pratt* v. *Eby*, 67 Pa. 396, (403).)

A title, on the other hand, may be perfectly good, although it may be altogether unmarketable; that is, there may be such an apparent cloud that a reasonably prudent man would not accept it, such as one covered with false liens, false attachments, etc. (*Black* v. *Ryan*, 4 App. D. C. 283.) A "title in fee" is altogether different from a marketable title. (*Wingard* v. *Copeland*, 64 Wash. 214, 116 Pac. 670.) A "clear title" means one in which there is no encumbrance whatsoever of record, or otherwise. It is a perfect title. (*Roberts* v. *Bassett*, 105 Mass. 409.) Now, while we concede that, under the instrument in question, we were to furnish him (a) all the title we had, and (b) that it was to be a good title, or even (c) a marketable title,—were we under any obligations, under this particular contract, to furnish him either (1) a title in fee, or (2) a clear title? Upon this latter question both the contract and the testimony are silent.

Before the appellant has a right of recovery or could, under any conditions, have a right of recovery, he must have procured and obtained a purchaser able, willing and ready to buy upon the exact, unconditional and precise terms of the offer so made by the respondent in said instrument of June 27. Failing in this, or proposing a different counter-element, his case fails. The slightest variation of the alleged acceptance is not a full and unconditional acceptance, but is in the nature of a counter-proposal,—a new offer. The acceptance must be unconditional and in accordance with the

very terms of the offer. (*Glenn* v. *S. Birch & Sons Const. Co.*, 52 Mont. 414, 158 Pac. 834; *Brophy* v. *Idaho Produce & Prov. Co.*, 31 Mont. 279, 78 Pac. 493; *Durham Life Ins. Co.* v. *Moize*, 175 N. C. 344, 95 S. E. 552; *Beiseker* v. *Amberson*, 17 N. D. 215, 116 N. W. 94; *DeJonge* v. *Hunt*, 103 Mich. 94, 61 N. W. 341; *Sterns* v. *Clapp*, 16 S. D. 558, 94 N. W. 431; *Carr* v. *Duvall*, 14 Pet. (U. S.) 77, 10 L. Ed. 361; *Kelsey* v. *Crowther*, 162 U. S. 404, 40 L. Ed. 1017, 16 Sup. Ct. Rep. 808.)

The letter of alleged acceptance by Gantt was wholly insufficient, because it added two conditions not in the contract, namely: (1) furnishing of an abstract, and (2) which had to show deed and clear title. We did not agree to either proposition. It was a new condition imposed by the plaintiff, constituted a counter-offer or proposition, which was never accepted by us. In that regard we wish to cite some cases, one from the state of Iowa, to-wit: *Knox* v. *McMurray*, 159 Iowa, 171, 140 N. W. 652; *McQuary* v. *Missouri Land Co.*, 230 Mo. 342, 130 S. W. 335; *Hopkins* v. *Lewis*, 18 Cal. App. 107, 122 Pac. 433; *Easton* v. *Montgomery*, 90 Cal. 307, 27 Pac. 280; *State* v. *Grimes*, 29 Nev. 50, 124 Am. St. Rep. 883, 5 L. R. A. (n. s.) 545, 84 Pac. 1061; 27 R. C. L., sec. 238; *Ness* v. *Larson*, 41 N. D. 211, 170 N. W. 623; *Rahm* v. *Cummings*, 131 Minn. 141, 155 N. W. 201; *Spengler* v. *Sonnenberg*, 88 Ohio, 192, Ann. Cas. 1914D, 1083, 52 L. R. A. (n. s.) 510, 102 N. E. 737; *Thompson* v. *Robinson*, 65 W. Va. 506, 17 Ann. Cas. 1109, 64 S. E. 718; *James* v. *Darby*, 100 Fed. 224, 40 C. C. A. 341.

Counsel for appellant claim that the new, unfinished and undelivered contract of later date aided and assisted the original contract so far as the alleged furnishing of an abstract is concerned; they contend that this last-mentioned contract fills the void, supplies the omission, and, taken together with the original option or contract of June 27, is a complete compliance with the statute and shows that an abstract was to be furnished. We respectfully submit that

the second contract last mentioned could in nowise or in any particular supply the admitted defects of the original contract. To that end we beg leave to suggest the following authorities: *Bruns* v. *Huseman*, 266 Ill. 212, 107 N. E. 462; *Lowther* v. *Potter*, 197 Fed. 196 (later affirmed in 221 Fed. 881); *Frazer* v. *Andrews*, 134 Iowa, 621, 13 Ann. Cas. 556, 11 L. R. A. (n. s.) 593, 112 N. W. 92; *Allen* v. *Bemis*, 120 Iowa, 172, 94 N. W. 560; *Carr* v. *Mazom*, 26 N. M. 308, 191 Pac. 137.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff to recover from the defendant the sum of $1,750, alleged to be due the plaintiff under a brokerage contract for the sale of certain real estate in Missoula county. Upon issue joined the cause was regularly brought on for trial before a jury. At the conclusion of the plaintiff's case the court sustained the defendant's motion for a nonsuit, and thereupon entered judgment dismissing the action and awarding costs to the defendant, from which the plaintiff has appealed.

In disposition of the case but two questions are necessary to be considered, viz.: (1) Did the court err in granting a nonsuit; and (2) Did the court err in the exclusion of certain evidence?

1. From the testimony it appears that on Saturday afternoon, June 25, 1927, the defendant executed a memorandum in writing reading as follows:

"Missoula, Montana, June, 27, 1927.

"For the consideration of one ($1.00) dollar, I this day give E. D. Gantt of Missoula, Montana, an option on our ranch consisting of thirty-six hundred forty (3,640) acres, formerly known as the Blanchard ranch, consisting of [here property is described.] All of the above thirty-six hundred forty (3,640) acres at a price of thirty-five thousand ($35,-000.00) dollars cash, less a commission of five per cent. (5%). The above option holds good for thirty days from the above date.

"H. E. HARPER."

On the following day, Sunday, June 26, the plaintiff called upon William Boyd, and the latter agreed to purchase the property for the sum of $35,000, to be paid in cash or upon terms, and thereupon gave the plaintiff his check dated June 27, 1927, for the sum of $500, payable to order of the defendant, to bind the bargain. The next day, Monday, June 27, the defendant and his brother, Robert W. Harper, visited the plaintiff's office in Missoula, and thereupon jointly executed a written agreement reading as follows:

"This agreement made and entered into this 27th day of June, 1927, by and between H. E. Harper, —— Harper and —— Harper, parties of the first part, and E. D. Gantt, party of the second part, all of Missoula county, Montana. Parties of the first part represent themselves to be the owners of the property hereinafter described and duly authorized to sell and party of the second part agrees to buy the real estate in Missoula county, Montana, commonly known as the Blanchard ranch, comprising thirty-six hundred forty acres (3,640) more particularly described as follows: [Here land is described.] Party of the second part agrees to pay for said property the full sum of thirty-five thousand dollars ($35,000.00), as follows, to wit: Five hundred dollars ($500.00) cash, upon the signing of this agreement, the receipt whereof is hereby acknowledged by the parties of the first part; nine thousand five hundred dollars ($9,500.00) at the time when parties of the first part shall furnish party of the second part an abstract of title showing marketable title to said property resting in parties of the first part, free of liens and incumbrances of every kind and nature, except taxes levied during the year 1927, said abstract to be furnished within ten days from date hereof; the balance of the purchase price shall be paid at the rate of three thousand dollars ($3,000.00) per year, said time to run from the date of the delivery of a warranty deed to party of the second part by parties of the first part. Deferred payments shall draw interest at the rate of six (6) per cent. per annum, payable annually. The en-

tire balance may be paid at any time after the delivery of the deed to said property and interest shall thereupon cease. Party of the second part agrees to deliver to parties of the first part bankable notes for said deferred payments.''

There is no question raised as to the plaintiff having secured a purchaser of the property nor as to the ability of the intending purchaser to pay for it in cash, or on the terms set forth in the second agreement. A third brother, Sterling Harper, had an interest in the property, and he refused to agree to the sale thereof, although the defendants Howard E. Harper and Robert W. Harper were willing to conclude the sale on the basis of the terms stated in the second contract. Sterling Harper, on or about July 23, 1927, offered the plaintiff the sum of $100; he was then in the company of the defendant who, at the suggestion of the former thereupon delivered to plaintiff a notice in writing reading as follows:

"Missoula, Montana, July 23, 1927.

"Mr. E. D. Gantt,

    "Missoula, Montana.

"Dear sir: This is to notify you and you are hereby given notice that those certain instruments in the nature of options or contracts for the sale of 3,640 acres of land, formerly known as the Blanchard ranch, consisting of the following described lands: [property described] are hereby annulled, revoked and avoided, and that you have no right to either sell or purchase the said property under and by virtue of the said instruments.

"ROBERT W. HARPER,
"HOWARD E. HARPER.''

Upon such evidence did the plaintiff make out a prima facie case entitling him to have his case submitted to the jury?

Our statute of frauds requires a note or memorandum in [1, 2] writing, subscribed by the party to be charged, or his agent, as a condition precedent to recovery of a broker's commission upon an agreement authorizing or employing an

82 Mont.—26

agent or broker to purchase or sell real estate. (Sec. 7519, Rev. Codes 1921.) This statute has frequently been considered and applied by this court and its provisions are held to be mandatory (*Skinner* v. *Red Lodge Brewing Co.*, 79 Mont. 292, 256 Pac. 173) as to the original agreement, as well as any subsequent modification in the terms thereof (*Skinner* v. *Red Lodge Brewing Co.*, supra.) Here the two agreements signed by the defendant are consistent in terms and should be considered together as constituting the memorandum in writing fixing the terms of the brokerage contract subscribed by the defendant, the party to be charged. In the absence of a contract containing different provisions, the broker earns his commission whenever within the time limit he produces a purchaser ready, willing, and able to buy the property in compliance with the terms of the brokerage agreement. (*Laux* v. *Hogl*, 45 Mont. 445, 123 Pac. 949; *Shober* v. *Dean*, 39 Mont. 255, 102 Pac. 323; *Shober* v. *Blackford*, 46 Mont. 194, 127 Pac. 329; *Lingquist* v. *Loble*, 62 Mont. 166, 204 Pac. 170; *Apple* v. *Henry*, 66 Mont. 244, 213 Pac. 444.) The evidence before the court makes out a prima facie case entitling the plaintiff to recover the agreed brokerage commission, and the court erred in granting a nonsuit.

2. During the course of the trial the plaintiff offered in [3-5] evidence a letter addressed to the defendant, reading as follows:

[Letter-head of E. D. Gantt.]

"Missoula, Montana, July 6, 1927.

"Mr. H. E. Harper,

"Greenough, Montana.

"Dear Howard: My client was in town yesterday, and I am writing to let you know that we are ready to go through with the ranch deal exactly as the option you signed under date of June 27. In other words, will pay spot cash as soon as you furnish a suitable abstract and deed showing clear title. This would make the deal exactly as the option

calls for. Just as soon as you are ready I would be very glad to close the deal according to the option.

> "Yours truly,
>
> "E. D. GANTT."

It was by the court excluded upon objection made thereto by counsel for the defendant as follows: "We object to the offer upon the ground, first, that it is not an acceptance of the offer made by the defendant in this case; in the second place, the offer was simply an option of the land, and the acceptance of it imposes two conditions that are not contained in the offer, the first that he shall furnish an abstract and the second that he shall furnish a deed showing clear title to the property. I think this is the whole case right here."

Counsel was correct; this is the determinative question of law in the case, but on defendant's objection it was excluded from the evidence. Notwithstanding, it is argued by the defendant's learned counsel that such acceptance varied the terms of the memorandum subscribed by the defendant to such an extent as to deprive plaintiff of right to recover the brokerage commission agreed to be paid. If this contention be upheld, it would appear needless to remand the case for a new trial simply to supply the evidence so rejected. The modified agreement made by the defendant was to furnish an abstract of title showing "*marketable title*" to the property, "free of liens and encumbrances of every kind and nature, except taxes levied during the year 1927." This offer of acceptance calls for "a suitable abstract and deed *showing clear title*." Counsel for the defendant, in his very able brief, says: "While we concede that, under the instrument in question, we were to furnish him [the plaintiff] (a) all the title we had, and (b) that it was to be a good title, or even a marketable title, were we under any obligations, under this particular contract, to furnish him either (1) a title in fee, or (2) a clear title?"

By the express terms of his contract the defendant interprets fully the meaning intended to be given to the words "*market-*

*able title"* in the contract. In effect he says it is to be un-
derstood as meaning title to the property, "free from liens and
encumbrances of every kind and nature." Is that not the
equivalent of "clear title"? From our examination of the
authorities, and the works of lexicographers, we are of opinion
that they amount to the same thing. By his agreement the
defendant undertook to deliver a warranty deed to the land
upon payment of the agreed purchase price, and thereby a
fee-simple title was presumed to pass by the grant. (Sec.
6866, Rev. Codes 1921.) "Every estate of inheritance is
a fee, and such estate, when not defeasible or conditional,
is a fee simple or an absolute fee." (Id., sec. 6724.) "In
modern English tenures, 'fee' signifies an estate of inheritance,
being the highest and most extensive interest which a man
can have in a feud; and when the term is used simply,
without any adjunct, or in the form "fee simple," it im-
ports an absolute inheritance clear of any condition, limita-
tion or restriction to particular heirs, but descendable to the
heirs general, male or female, lineal or collateral. 2 Bl.
Comm. 106." (Black's Law Dictionary, 2d ed., p. 486.) A
fee "is an absoute estate in perpetuity, and the largest pos-
sible estate a man can have, being in fact, allodial in its na-
ture." (Black's Law Dictionary, 2d ed., p. 487, and cases
there cited.) And a fee-simple title is "a freehold estate of
inheritance absolute and unqualified. It stands at the head
of estates as the highest in dignity and the most ample ˉin
extent; since every other kind of estate is derivable thereout,
and mergeable therein. Wharton." (Black's Law Dictionary,
2d ed., p. 487.) "It is called fee-simple, that is, 'pure,' because
clear of any condition or restriction to particular heirs."
(*Haynes* v *Bourn*, 42 Vt. 686.) A fee-simple title is the
largest estate known to the law. (*Brackett* v. *Ridlon*, 54 Me.
426.)

The words "marketable title" are the equivalent of 'good
title," and mean such as can be sold to a reasonable pur-
chaser, or mortgaged to a person of reasonable prudence, as

[82 Mont. 393.]

security for a loan of money. (*Fagan* v. *Hook,* 134 Iowa, 381, 105 N. W. 155, 111 N. W. 981.) Taken alone, it is generally held to mean "a title concerning which there is no fair and reasonable doubt; such title as a court of equity would compel a purchaser to accept on a bill by the vendor for specific performance." (Maupin on Marketable Title to Real Estate, 3d ed., p. 708; 5 Words and Phrases, First Series, pp. 4388, 4389, and cases there cited; Warvelle on Abstracts, 4th ed., sec. 605.) It is title of such character "as assures to the purchaser the quiet and peaceful enjoyment of the property and one which is free from encumbrances. (*Barnard* v. *Brown,* 112 Mich. 452, 67 Am. St. Rep. 432, 70 N. W. 1038.)" (*Ogg* v. *Herman,* 71 Mont. 10, 227 Pac. 476.) And "a clear title means that the land is free from encumbrances." (*Ogg* v. *Herman,* supra.)

Webster's definition of the word "clear" as here employed is "free from encumbrance, obstruction, burden, limitation," etc., and the word "title," in the sense here used, "the union of all the elements which constitute ownership, at common law, divided into possession, right of possession and right of property, the last two now, however, being considered essentially the same."

In our opinion, the words, "clear title," as employed in the plaintiff's letter, denied admission in evidence, means title to the property free from any encumbrance, burden or limitation, uniting all the elements constituting ownership, including right of possession and right of property—i. e., fee-simple title. Such was in effect the contract upon which the defendant agreed to pay a brokerage commission on the sale of the property, and the tender of performance was complete and in accordance with the defendant's terms.

The only case we have found bearing upon the subject of "clear title," other than our own case of *Ogg* v. *Herman,* supra, is that of *Robert* v. *Bassett,* 105 Mass. 409, referred to in the *Ogg Case,* wherein it is held that a contract to convey "by a deed conveying a clear title" to a parcel of land owned

by the vendor is not satisfied by tendering a warranty deed to the property where there is an encumbrance on the land. This is the only case cited by counsel for either of the parties interpreting the meaning of the words "clear title," and it would appear to justify our interpretation of the defendant's contract before us.

It will be noted the plaintiff's letter of acceptance was dated July 6, 1927, long before the defendant's attempted withdrawal of his agreement to sell the property by letter dated July 23, 1927.

For the reasons stated, the judgment is reversed and the cause remanded to the district court of Missoula county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

Rehearing denied May 25, 1928.