GANTT, RESPONDENT, v. HARPER, APPELLANT.

(No. 6,502.)

(Submitted October 2, 1929. Decided November 5, 1929.)

[281 Pac. 915.]

*Mr. Harry H. Parsons,* for Appellant.

*Messrs. Murphy & Whitlock* and *Mr. E. C. Mulroney,* for Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment rendered in favor of plaintiff on a directed verdict. The action is one to recover $1,750 as commission for the sale of real estate. The facts are succinctly stated in the opinion delivered by Mr. Justice Galen, speaking for the court, on a former appeal, reported in 82 Mont. 393, 267 Pac. 296, and only such portion of the evidence as is necessary to present the specific questions herein involved will be repeated.

As evidencing his contract of employment, plaintiff introduced in evidence a written memorandum as Exhibit "A," admittedly signed by defendant on June 25, 1927, reading as follows:

"Missoula, Montana, June 27, 1927.

"For the consideration of One ($1.00) Dollar, I this day give E. D. Gantt of Missoula, Montana, an option on our ranch consisting of Thirty-Six Hundred Forty (3,640) acres formerly known as the Blanchard Ranch consisting of 600 acres in Sec. 32, T. 14, R. 15, 640 acres in Sec. 33, T. 14, R. 15, 640 acres in Sec. 34, T. 14, R. 15, 640 acres in Sec. 29, T. 14, R. 15, 160 acres in Sec. 30, T. 14, R. 15, 160 acres in Sec. 28, T. 14, R. 15, 480 acres in Sec. 4, T. 14, R. 14, 320 acres in Sec. 8, T. 14, R. 14. All of the above Thirty-six Hundred Forty (3,640) acres at a price of Thirty-Five Thousand ($35,000.00) Dollars cash less a commission of five per cent. (5%). The above option holds good thirty days from the above date.

"H. E. HARPER."

He likewise introduced in evidence as Exhibit "C" the following memorandum, signed by the defendant and his brother, Robert W. Harper:

"Contract for Sale of Real Estate. This agreement made and entered into this 27th day of June, 1927, by and between H. E. Harper, —— Harper and —— Harper, parties of the first part, and E. D. Gantt, party of the second part, all of Missoula county, Montana. Parties of the first part represent themselves to be the owners of the property hereinafter described and duly authorized to sell the same. Parties of the first part hereby agree to sell and party of the second part agrees to buy the real estate in Missoula county, Montana, commonly known as the Blanchard Ranch, comprising Thirty-Six Hundred Forty acres (3,640) more particularly described as follows: [Here follows the description of property the same as in Exhibit A.] Party of the second part agrees to pay for said property the full sum of Thirty-Five Thousand Dollars ($35,000.00), minus a commission of five (5) per cent., said sum payable as follows, to wit: Five Hundred Dollars ($500.00) cash, upon the signing of this agreement, the receipt whereof is hereby acknowledged by the parties of

the first part; Nine Thousand Five Hundred Dollars ($9,500.00) at the time when parties of the first part shall furnish party of the second part an abstract of title showing marketable title to said property resting in parties of the first part, free of liens and encumbrances of every kind and nature, except taxes levied during the year 1927, said abstract to be furnished within ten days from date hereof; the balance of the purchase price shall be paid at the rate of Three Thousand Dollars ($3,000.00) per year, said time to run from the date of the delivery of a warranty deed to party of the second part by parties of the first part. Deferred payments shall draw interest at the rate of six (6) per cent. per annum, payable annually. The entire balance may be paid at any time after the delivery of the deed to said property and interest shall thereupon cease. Party of the second part agrees to deliver to parties of the first part bankable notes for said deferred payments. In event parties of the first part are unable to furnish an abstract of title showing marketable title as above specified, said first payment of Five Hundred Dollars ($500.00) shall be refunded on demand. Parties of the first part agree to deliver a warranty deed to the First National Bank of Missoula, as an escrow, to be delivered to party of the second part, his heirs, or assigns, upon full payment of the entire purchase price, above mentioned. Parties of the first part further agree to deliver possession of said premises to party of the second part as soon as they are able to dispose of their personal property thereon, not to exceed a period of thirty (30) days from date hereof. This contract is binding upon, and inures to the benefit of the heirs, executors and assigns of the parties hereto.

"In Witness Whereof, said parties have hereunto set their hands the day and date first above written.

"HOWARD E. HARPER.

"ROBERT W. HARPER."

The record without contradiction establishes that plaintiff, ▉ pursuant to his employment, found a purchaser for the ranch known as the Blanchard ranch, consisting of 3,640

acres, who was ready, able and willing to pay the agreed price of $35,000, and that defendant refused to sell the property, for the reason that his brother, Sterling Harper, had an interest therein and that he refused to join in the sale. At the trial it developed that a portion of the description of the Blanchard ranch by legal subdivisions, as given in the memoranda, was incorrect, in that the greater part of it is situated in township 15, range 14, instead of in township 14, range 15.

Defendant contends that plaintiff failed to show a fulfillment of his contract, because he failed to prove that he secured a purchaser for lands situated in township 14, range 15, as described in the memoranda. This contention cannot be sustained. True, he did not prove that he had secured a purchaser for land in township 14, range 15; but this was not necessary. The memoranda were simply evidence of plaintiff's employment, required by statute to be in writing. If the property can be identified with reasonable certainty, the memorandum is sufficient. (*Shaw* v. *McNamara & Marlow,* 85 Mont. 389, 278 Pac. 836; *Henderson* v. *Lemke,* 60 Or. 363, 119 Pac. 482.)

Here, Exhibit "A" described the property as "our ranch consisting of 3,640 acres, formerly known as the Blanchard Ranch." Exhibit "C" referred to the property as the "Blanchard Ranch." Hence, by disregarding the erroneous description by legal subdivisions in the memoranda, there still remains a sufficient description from which it can be ascertained what property the parties referred to. The rule is that, if there is a sufficient description of the property to admit of identification, inaccuracies in the description may be disregarded. (5 Wigmore on Evidence, sec. 2476.)

Furthermore, the defendant by his answer admitted that he executed Exhibit "A," which he alleged in his answer "was an option given to the plaintiff to purchase the lands mentioned in plaintiff's complaint." In the complaint the lands were described as "certain real estate located in Missoula county, Montana, and containing approximately 3,640 acres, and known as the Blanchard Ranch." Also from the evidence

it is clear that the parties understood that they were contracting with reference to the sale of the Harper property, known as the "Blanchard Ranch." This was the only land in Missoula county owned by the Harper brothers. Defects in the description of the property in the memorandum may be cured, as here, by allegations and proof of extrinsic facts and circumstances. (*Pray* v. *Anthony*, 96 Cal. App. 772, 274 Pac. 1024; *Fleming* v. *Bishop*, (Ind. App.) 165 N. E. 252.) The proof was ample to show that plaintiff secured a purchaser ready, willing and able to buy the property known as the "Blanchard Ranch" upon the agreed terms, and it was not incumbent upon plaintiff to prove more. (*Gantt* v. *Harper*, 82 Mont. 393, 267 Pac. 296.)

Defendant contends, also, that an issue was raised in this case as to whether defendant agreed to furnish an abstract, and for that reason the cause should have been submitted to the jury. Exhibit "C" expressly required the defendant to furnish an abstract of title showing marketable title free of liens and encumbrances. Whether it was permissible for defendant to vary the terms of Exhibit "C" by oral evidence need not be decided. By his oral testimony he did not deny, but admitted, that he was under obligation to furnish an abstract. He testified: "There was a quibble or complaint on my part about furnishing an abstract to this ranch; that occurred on Monday, the day that this instrument was brought up for signature. As to whether I agreed in that instrument to furnish an abstract within 10 days, I think that is the way the instrument read and I agreed to the instrument. It was my understanding that I was to furnish an abstract if the sale went through according to the terms of that contract; yes, sir; I mean in that Exhibit C." Obviously, then, there was no issue tendered in relation to the duty of furnishing an abstract that called for the judgment of the jury.

Defendant also contends that, since plaintiff found the purchaser before Exhibit "C" was executed, there was no consideration for Exhibit "C," and for that reason defend-

ant was under no obligation to furnish an abstract as therein provided. On the former appeal (82 Mont. 393, 267 Pac. 296) this court held that Exhibit "A" and Exhibit "C" "are consistent in terms, and should be considered together as constituting the memorandum in writing fixing the terms of the brokerage contract subscribed by the defendant, the party to be charged."

The two instruments, constituting, as they do, the memorandum evidencing the employment, are not required to be supported by a consideration. Thus, a memorandum executed after the services have been performed is sufficient to satisfy the requirements of the statute of frauds. (*Puffer* v. *Bradley*, 92 Or. 360, 4 A. L. R. 1561, 181 Pac. 1; *Pearson* v. *Crummer*, 97 Cal. App. 707, 276 Pac. 153.) The services rendered in securing a purchaser constitute the consideration for the commission.

It is next contended by defendant that Exhibit "C" provides an exclusive penalty for failure to deliver an abstract. It provides: "In event parties of the first part are unable to furnish an abstract of title showing marketable title as above specified, said first payment of Five Hundred Dollars ($500.00) shall be refunded on demand." This provision was evidently intended by the parties as one of the conditions to be placed in the contract of sale to a purchaser to be found by plaintiff. Exhibit "C," as held by this court on the former appeal, is simply a part of the memorandum evidencing plaintiff's employment. It never became operative as a contract of sale. The clause above quoted was inserted for the benefit of the purchaser, and not the seller, and its provisions have no effect upon plaintiff's right to the commission agreed upon for his services in securing a purchaser for the property.

It is also contended that the court erred in directing a verdict for plaintiff because, it is asserted, there was an issue of fact, which should have been submitted to the jury, as to the point whether defendant Harper, in signing the memoranda, was a special agent with limited powers, and

whether this was known to plaintiff. The only evidence in the record that bears upon this question is the following: Plaintiff was told by defendant, at the time Exhibit "A" was executed, that defendant's brother Robert had an interest in the land. When Exhibit "C" was signed, defendant told plaintiff that he (defendant) would have to confer with his brother Robert, because he (Robert) had an equal interest in the property. He thereupon did confer with his brother Robert, and the latter signed the memorandum, Exhibit "C."

There is no evidence that the third brother, Sterling, had to be consulted before the contract of employment became effective. Plaintiff testified that defendant represented to him, when the option was given, that he had authority to sign it. He said that he never heard of the brother Sterling, and never knew there was such a man at the time Exhibit "C" was signed. This evidence stands uncontradicted in the record.

Furthermore the rule is that a person employing another ██ to sell property on commission is not relieved from paying the agreed commission by the fact that he is not the owner of the property. (9 C. J. 585, 627; *Sanchez* v. *Yorba*, 8 Cal. App. 490, 97 Pac. 205; *Smith* v. *Schiele*, 93 Cal. 144, 28 Pac. 857.)

There was no conflict in the evidence on the material issues, and hence there was no question to be submitted to the jury. The court did not err in instructing the jury to return a verdict for plaintiff.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

Rehearing denied November 18, 1929.